Ina M. Johnson, Appellee, v. Charles R. Smith et al., Appellees; Success Heater Manufacturing Company, Appellant.

No. 40201.

June 23, 1930.

*Burton Russell,* for Success Heater Manufacturing Company, appellant.

592

*John DeMar* and *James E. Goodwin,* for James A. Calhoun and Dollie Calhoun, appellees.

*Howard L. Bump,* for Charles R. Smith, Sally Smith, Williard C. George, Hazel E. George, Ina Mildred George, minor, and Bankers Trust Co., Guardian, appellees.

*Curtis W. Gregory,* for Ina M. Johnson and L. V. Russell, Administrator, appellees.

*Wessels & Wessels,* for Excelsior Steel Furnace Co., appellee.

*Charles E. Bellew,* for Hattie E. Cook and Charles R. Cook, appellees.

*John G. Regan,* for John G. Regan, guardian *ad litem* of Oscar M. Johnson, appellee.

*Stipp, Perry, Bannister, Starzinger & Little,* for Northwestern Mutual Life Insurance Company of Milwaukee, appellee.

KINDIG, J.—Clark Smith and Mary E. Smith were husband and wife, and during their lifetime they owned a quarter section of land in Dallas County. On August 12, 1918, they agreed by contract to, and did, sell said real estate to John J. and Lovira Kitchell. Thereafter, on June 24, 1919, the Kitchells, vendees, assigned the real estate contract to Harry F. Copeland, who held the instrument until it was set aside by judgment, as hereinafter explained.

Before their deaths, the vendors Clark and Mary E. Smith placed a first mortgage upon the land aforesaid, to secure the sum of $8,000, borrowed from the defendant-appellee Northwestern Mutual Life Insurance Company. Subsequently, Clark Smith died testate, on March 12, 1925, and on March 16th thereafter, Mary E. Smith departed this life, leaving a will, as her husband had done. The husband devised and bequeathed all his property to the wife, for her use and benefit, and directed that the remainder, if any at her death, was to go to their children, share and share alike. Consistent with her husband's will, Mary E. Smith devised and bequeathed her property to Clark Smith for his use during life, and the remainder, if any, was given to their four children. Both wills were pro-

bated, and the defendant-appellee L. V. Russell was appointed administrator with the will annexed, under each. Charles R. Smith, Elma E. George, Hattie E. Cook, and Ina M. Johnson were the children of Clark and Mary E. Smith named in the foregoing wills, and each obtained an undivided one-fourth interest in and to the property left by their parents, subject to the contingencies relating to Charles R. Smith hereinafter discussed.

So far as material to this appeal, the entire controversy grows out of money owed the estate, an assignment made to James A. and Dollie Calhoun, the defendants-appellees, and an indebtedness due the defendant-appellant, Success Heater Manufacturing Company, by the said devisee Charles R. Smith. A more detailed statement of the facts relating to the controversy will be helpful here.

There arose, from time to time, the following three separate debts which were incurred by Charles R. Smith: First, during their lifetime, Clark and Mary E. Smith loaned and advanced to their son, the said Charles R. Smith, certain sums of money, amounting in all to $3,182. For the purpose of avoiding unfairness to the other beneficiaries, the administrator, in a proper proceeding, sought a decrease, to the extent of said indebtedness, of the interest in the estate otherwise owned by the beneficiary Charles R. Smith, and obtained therefor a judgment accordingly on January 15, 1929. Second, it appears that Charles R. Smith aforesaid, on August 20, 1926, assigned to the appellees James A. and Dollie Calhoun, for collateral security, "all his right, title, claim, and interest in and to" the aforesaid real estate contract wherein Clark and Mary E. Smith were vendors, John J. and Lovira Kitchell vendees, and Harry F. Copeland vendee-assignee. At the time of this assignment, Clark and Mary E. Smith were deceased. Said assignment was made by Charles R. Smith for the purpose of securing the purchase price of certain Des Moines real estate sold to him by the Calhouns. Only a small portion of the consideration, of more than $9,000, was paid in cash, and it was contemplated that the balance would be forthcoming when the vendees in the Clark and Mary E. Smith farm land contract made settlement, on March 1, 1929. Hence, the appellees James A. and Dollie Calhoun, under the assignment of Charles R. Smith, claimed an interest to that ex-

tent in the Dallas County land contract aforesaid. And third, the appellant, Success Heater Manufacturing Company, obtained a judgment on April 27, 1928, in the Polk County district court against Charles R. Smith on a valid obligation. Transcript of that judgment was filed in Dallas County, May 4, 1928.

Those are the three competing claims against the interest of Charles R. Smith in and to the property of his parents' estates. Each claimant demands priority. Another event must be taken into consideration before a solution can be made of the problem. Preceding April 9, 1929, certain persons concerned in the estates of Clark and Mary E. Smith brought an action to dispose of the Dallas County land contract aforesaid, because the vendee-assignee, Copeland, was insolvent, and could not perform. All three claimants in the present controversy were parties to that proceeding. As a result of the hearing, the district court authorized the administrator to cancel the Dallas County real estate contract (which the administrator did, on or about April 8, 1929); but in so doing, the district court especially protected those interested in judgments against, and assignments made by, the said Charles R. Smith. An excerpt from the judgment and decree will elucidate. It is as follows:

"'* * * That the rights of said assignees * * * James A. Calhoun and Dollie Calhoun [and appellant, Success Heater Manufacturing Company] should not be affected by the order herein, but [the litigations over the priority between the Calhouns and the appellant] are hereby continued, without prejudice to each and all rights that they [the Calhouns and the appellant] now have, before the contract [Dallas County land contract, aforesaid] herein described is canceled. It is therefore ordered, adjudged, and decreed * * * [that] this order canceling the contract with Harry F. Copeland [the vendee-assignee under the Dallas County land contract] is without prejudice to the rights of judgment creditors of Charles R. Smith, or assignees of Charles R. Smith, * * * and the determination of their rights in and to the land [the Dallas County land owned and devised by Clark and Mary E. Smith] after the cancellation of the contract [the Dallas County land contract aforesaid] and [the priority among them] shall be determined [in the future]."

Upon the foregoing facts, appellant bases this claim for

priority over the one of the administrator and that of the Calhouns. Convenience suggests that the claim of the administrator first be considered.

I. Again it is recalled that the administrator's claim placed in judgment was for moneys advanced to, and debts paid for, the son Charles R. Smith by his parents, Clark and Mary E. Smith, during their lifetimes. Such judgment was obtained by the administrator against Charles R. Smith on January 15, 1929. Appellant's judgment was procured April 27, 1928, but was not transcripted to Dallas County until May 4th of that year.

Attention is here directed to the fact that appellant's judgment, as transcripted, predates that of the administrator. Basing its contention upon this fact, appellant claims priority. Cancellation of the Dallas County real estate contract before mentioned was made April 8, 1929. Hence, appellant maintains that its judgment, being in existence at that time, became a lien on the land when it reverted back to the beneficiaries of the grantors. Rescission through the cancellation, appellant urges, put an end to the contract, and what was formerly personal property in the hands of the estate became real estate. So appellant's judgment, it argues, immediately came down as a lien upon Charles R. Smith's share of the land when the sale contract was canceled. On the other hand, the administrator did not obtain his judgment until January 15, 1929.

In answer to the foregoing proposition, the administrator declares that appellant had no lien on the real estate at any time superior to the claim held by the estate against Charles R. Smith, because, the administrator continues, Charles R. Smith in equity never had or was entitled to that portion of the estate given by the court to the administrator. Equity dictates, according to the administrator, that the other beneficiaries of Clark and Mary E. Smith, under the circumstances, need not sacrifice their interests for the debts and obligations due the estate from Charles R. Smith. Because of the facts and circumstances here presented, we are inclined to agree with the administrator.

The appellant, as a judgment creditor of Charles R. Smith's, was entitled to take no portion of the personal property or real estate not owned by the debtor. "His right can rise no higher than that of his debtor." *Cumming v. First Nat. Bank*, 199

Iowa 667; *Vanderwilt v. Broerman*, 201 Iowa 1107 (local citation, 1115); *Hunter v. Citizens Sav. & Tr. Co.*, 157 Iowa 168 (local citation 171); *Watson v. Bowman*, 142 Iowa 528.

"A judgment creditor is not a subsequent purchaser for value of the land." *Cumming v. First Nat. Bank* (199 Iowa 667), supra.

Until April 8, 1929, at least, Charles R. Smith did not own the real estate in question. He, up to that date, had only an undivided one-fourth interest in and to the aforesaid sale contract, wherein Copeland was the vendee-assignee. Therefore, Charles R. Smith was the owner of personal property, as distinguished from real estate. *Cumming v. First Nat. Bank* (199 Iowa 667), supra; *Larson v. Metcalf*, 201 Iowa 1208. A quotation from the *Cumming* case will elucidate (reading on page 668):

"Under such circumstances [a sale contract], the ownership of the real estate, as such, passes to the purchaser; and from that time forth the vendor holds legal title as security for his debt, and as trustee for the purchaser. *In re Estate of Miller*, 142 Iowa 563. This is the recognized rule in Iowa. The title in equity passed to the vendee. It is not dependent upon a conveyance nor upon the payment of the purchase money; nor is possession or delivery of possession a necessary incident. *O'Brien v. Paulsen*, 192 Iowa 1351. * * * A judgment creditor is not a subsequent purchaser for value of the land. * * * The vendor's interest being personal property, it necessarily follows that a judgment obtained against the vendor after the date of such contract does not become a lien upon the land."

Likewise, we said, in *In re Estate of Miller*, 142 Iowa 563, on page 566:

"The interest acquired by the vendee is 'land,' and the right and interest conferred by the contract upon the vendor is 'personal property.' In case of the death of the vendee, his interest in the land would descend to his heirs. In case of the death of the vendor, his interest would pass as personal estate to his administrator. A judgment against the vendee would become a lien on the land * * *."

To the same effect see *Larson v. Metcalf* (201 Iowa 1208), supra.

Both appellant and the administrator argue that, upon the ancestors' death, Charles R. Smith's interest in the estate was personal property, because at that time the estate was under contract to convey the Dallas County land. Thus, on January 15, 1929, when the administrator obtained his judgment against Charles R. Smith for the purposes aforesaid, the latter was the owner of personal property, and not real estate. It being personal property, appellant had no lien thereon because of its judgment. *Cumming v. First Nat. Bank* (199 Iowa 667), supra; *In re Estate of Miller* (142 Iowa 563), supra. Consequently, appellant was in no way prejudiced by the order and decree of court giving the administrator judgment for a sufficient portion of Charles R. Smith's interest in the personal property "to compensate for the debts and advancements made for him by his parents." Under those conditions, the district court properly set off to the administrator such property. In *Senneff v. Brackey*, 165 Iowa 525, reading on page 531, we declared:

"The general rule as to personal property is that, as against a bequest to one who is already indebted to the estate, the amount of this indebtedness may be set off or detained against the legacy. And this may be done, as we understand it, whether the legatee be solvent or insolvent."

To the same effect see *Schultz v. Locke*, 204 Iowa 1127; *Woods v. Knotts*, 196 Iowa 544. As a matter of fact, the judgment and decree entered in favor of the administrator is broad enough in its scope to include the personal property and any equity in the real estate then held by or later accruing to Charles R. Smith after the cancellation, or any other contingency.

Included within the property set off to the estate, then, was the entire interest of Charles R. Smith, including personal property and all possible existing or future interest in the real estate. By that judgment and decree Charles R. Smith was bound. He was a party to that proceeding, and did not appeal from the final judgment entered therein. No greater interest can be obtained by appellant through its judgment than that held in the real estate by Charles R. Smith at the time when the judgment

becomes operative as a lien on the property. See cases previously cited.

But appellant argues that it was not a party to the proceedings which resulted in said judgment against Charles R. Smith; therefore it is concluded that appellant is not bound thereby, so far as the judgment attempts to create an equity in the real estate in favor of the estate. Basis for this contention is that appellant's judgment was in existence and on record first, and therefore it became a lien upon any equity in real estate which Charles R. Smith possessed, even without an equitable proceeding to make it such.

Assuming, without deciding, that, under some contingency, appellant's claim could have merit, nevertheless the judgment and decree of the district court in the case at bar can be sustained. An interest in Charles R. Smith's equity in the real estate, even as against appellant's judgment, could, under proper circumstances, be set off to the administrator for the indebtedness proven. The estates of both father and mother were in the process of administration. Neither had been closed. Charles R. Smith, according to the entire record, and the statement of counsel, was insolvent, and it seems that the estate held no personal property after the Dallas County land contract was canceled. No controversy anywhere appears regarding this. Hence it was proper to set off a sufficient portion of Charles R. Smith's share in the real estate to the administrator for the purpose of satisfying the claim against Charles held by the estate. *Woods v. Knotts* (196 Iowa 544), supra; *Schultz v. Locke* (204 Iowa 1127), supra. Then, when appellant's judgment lien came down upon the property of Charles R. Smith, so far as the administrator is concerned it could affect only the portion thereof which in equity belonged to said beneficiary. Because in equity the administrator's claim on behalf of the estate was superior to Charles R. Smith's interests in and to the real estate, then such administrator's demand must also be paramount to any rights of the appellant's through its judgment against said beneficiary.

Clearly, therefore, the administrator had a prior equity, and the district court did not err in so holding.

II. Attention now is directed to the contest between appellant and James A. and Dollie Calhoun. Appellant claims that its judgment is superior to the equity of the Calhouns, re-

 ceived through the assignment of Charles R. Smith's interest in the Dallas County land contract. Continuing its argument at this place, appellant says that the cancellation entirely nullified any interest in the Dallas County real estate contract previously held by the Calhouns. There being no Dallas County land contract after the cancellation, appellant asserts that the collateral security held by the Calhouns must also cease. An assignment of the Dallas County land contract, according to appellant, does not carry with it an interest in the real estate after the agreement was canceled. In this regard appellant entirely overlooks the reservation before quoted and set forth in the judgment and decree allowing the administrator to cancel the Dallas County land contract. All the rights held by the Calhouns in the premises before the cancellation were retained for them by express provision of the judgment, as previously noted. Calhouns obtained their assignment from Charles R. Smith August 20, 1926. That assignment, then, was in full force and effect at the time the Dallas County land contract was canceled, April 8, 1929. By virtue of the assignment, the Calhouns, together with the other beneficiaries under the wills of Clark and Mary E. Smith, could have sued the purchaser under the Dallas County land contract and foreclosed the agreement as a mortgage.

Again, the beneficiaries under the wills and the Calhouns could have forfeited the contract, and thereby obtained the land. The effect of the cancellation was that those interested as vendors under said contract relinquished the right to obtain the consideration named therein, and the vendee-assignee returned to them the land itself. At no time did the Calhouns release their equity under the assignment from Charles R. Smith. This equity was preserved for them expressly under the judgment and decree permitting the cancellation before mentioned. Such equity was owned and held by the Calhouns even before the appellant obtained judgment against Charles R. Smith. Never did appellant have a lien upon the real estate superior to that of the Calhouns. If, then, the judgment and decree entered April 8, 1929, allowing the cancellation, reserved the rights and equities of the Calhouns, they are still retained by them, regardless of the administrator's action in nullifying the contract; because

the cancellation, under the decree, was to make no difference between the rights and equities of the appellant and the Calhouns. Each litigant here involved was a party to the proceedings resulting in the cancellation and reserving all equities for the Calhouns. No appeal was taken therefrom by the appellant. An equity having been thus obtained, preserved, and established in favor of the Calhouns, they may realize on the same as on an equitable mortgage. Such equity is in the nature of a lien. Said lien was created by contract.

" 'A lien created by contract, and not sufficient as a legal mortgage, will generally be regarded in the nature of an equitable mortgage. The form of the contract is immaterial.' " *In re Assignment of Snyder,* 138 Iowa 553.

See, also, *Lamm v. Armstrong,* 95 Minn. 434 (104 N. W. 304).

What the result would be without the reservation in the judgment and decree, we do not now decide or suggest. With the reservation, however, the Calhouns clearly had an equity superior to appellant's judgment, which survived the cancellation of the Dallas County land contract.

Obviously, therefore, the district court properly declared appellant's judgment inferior to the equity held by the Calhouns. Wherefore, the judgment and decree of the district court should be, and hereby is, affirmed.—*Affirmed.*

MORLING, C. J., and EVANS, DE GRAFF, WAGNER, and GRIMM, JJ., concur.