STATE v. H. LONGSTREET TAYLOR FOUNDATION.[1]

November 6, 1936.

No. 31,045.

[1]Reported in 269 N. W. 469.

264

*Albert Johnson,* for the State.

*Oppenheimer, Dickson, Hodgson, Brown & Donnelly, George W. Jansen,* and *Robert F. Leach,* for respondent.

JULIUS J. OLSON, JUSTICE.

In proceedings to enforce delinquent personal property taxes against defendant in Pine county defendant answered the state's citations, claiming that the property sought to be taxed was exempt under art. 9, § 1, of our constitution. The matter was heard upon issues duly framed, and findings and order for judgment sustaining defendant's position were entered. The state's motion for new trial was denied and it appeals. (As a matter of fact there are two cases, but as both are founded upon identical issues we shall treat them as though there were but one for decision.)

The facts found by the court, and there is no substantial conflict, may be summarized thus: Defendant is a domestic corporation organized in 1932 under the provisions of 2 Mason Minn. St. 1927, § 7892. Immediately upon its formation it took over a sanatorium building and all other property and equipment belonging to Dr. H. Longstreet Taylor which he had organized and operated since 1907 under the name of "Pokegama Sanatorium, Inc." In making the purchase no cash was involved, as notes and mortgages were given for the purchase money. Ever since then defendant has operated the property in strict conformity with its articles of incorporation. These provide that it should conduct and operate "on a nonprofit and purely public, charitable basis a hospital or sanatorium for the treatment of human diseases, having special reference to the treatment and cure of tuberculosis and other diseases of the lungs." The articles also provide that the corporate enter-

prise was authorized "to establish, maintain and operate a nurses' home and training school, and all necessary clinical, pathological, medical and surgical research libraries and laboratories." Further purposes were to "disseminate information relative to the treatment of tuberculosis and other diseases of the lungs and the care of people suffering therewith, and to initiate and join in campaigns or other programs or methods, seeking to accomplish the above purposes." It was authorized to acquire by purchase, gift, grant, or devise, and might hold and use, invest, expend, convey, or dispose of any of its real or personal property "for any of the purposes" for which the corporation was created. It is specifically prohibited from diverting any gift, grant, devise, or bargain from the specific purpose or purposes designated by the donor without his or her consent.

There are two classes of memberships authorized. The first class was designated as "regular" and the second as "contributing" members. Regular membership is limited to the "holders of the shares of capital stock of the corporation." The contributing members consist "of such persons as shall have contributed in accordance with rules to be formulated by the Board of Trustees to the funds of the corporation or the advancement of its interest." Only the regular members have the right to vote in the election of officers and trustees of the corporate enterprise. The capital stock consists of 100 shares without any nominal or par value. Under article VI it is provided:

"None of the regular or contributing members shall share in the profits of the corporation, all of which shall be devoted to the advancement of the purposes and objects of the corporation." No distribution of property among members of the corporation is to be made until its actual dissolution, "at which time all assets of the corporation then represented by contributions and unrestricted gifts and devises shall be transferred to and devoted to such other charitable purposes as the Board of Trustees shall determine. Any remaining property of the corporation shall belong to the regular membership."

The court found that all of the property sought to be taxed in these proceedings "was necessarily and exclusively used by the defendant in the operation of a sanatorium in said town for the treatment of patients suffering from tuberculosis;" and that "ever since the incorporation of defendant it has been engaged in the activities for which it was organized" and has at all times been operated at a loss.

During the time of its existence defendant has made charges against all patients who have been able to pay for treatment and care. Various counties in this state have been sending pauper patients to defendant institution for care and treatment. For these a charge of $19.50 per week is made. The general charge to paying patients runs from $25 to $35 per week. In many instances, however, those in charge have accepted "almost anything" the patient could pay, and "sometimes patients are not able to pay" anything. "They [patients] are brought in and it is impossible to move them so they are maintained." Defendant also furnishes and provides "one free bed" for Pine county. The sanatorium is open to all patients, but the medical staff is a so-called "closed staff." Any patient may, however, engage his own doctor, and no charge is made against the patient or the doctor because thereof.

The court was of opinion that two questions were determinative of decision. First, whether defendant under the terms of its articles is within art. 9, § 1, of our constitution; and, second, whether the property involved was and had been used exclusively for the declared purposes of the corporation. The court concluded that both questions must be answered affirmatively, hence that the taxes levied should be "set aside and cancelled."

The state challenges the court's conclusion that defendant, upon the facts found and hereinbefore related, should be classified as an institution of "purely public charity." In this behalf it is urged that defendant is not "substantially maintained by charity" and that the charges to patients are "made to keep the sanatorium going"; that "its charitable functions are subordinate to its main purpose"; and, lastly, that article VI of the corporate articles provides for distribution of any "remaining property" among the reg-

ular members upon dissolution of the corporation. But, it will be noted, there can be no distribution of property among the members of the association *until its dissolution,* "at which time all assets of the corporation then represented by contributions and unrestricted gifts and devises shall be transferred to and devoted to such other charitable purposes as the Board of Trustees shall determine. Any remaining property of the corporation shall belong to the regular membership." It is said that Brown v. Maplewood Cemetery Assn. 85 Minn. 498, 504, 89 N. W. 872, determines the legal effect of the language employed. The case is clearly distinguishable. There defendants in their brief stated that they "have made no pretense of giving free burial, or in any way acting as a public charity or as an eleemosynary corporation"; and counsel conceded that the cemetery was conducted upon "a business basis, looking for financial returns, and in no way" different from other private enterprises.

Article 9, § 1, of our constitution, as far as here material reads:

"The power of taxation shall never be surrendered, suspended or contracted away. Taxes shall be uniform upon the same class of subjects, and shall be levied and collected for public purposes, but public burying grounds, public school houses, *public hospitals,* academies, colleges, universities, and all seminaries of learning, all churches, church property, and houses of worship, *institutions of purely public charity,* and public property used exclusively for any public purpose, shall be exempt from taxation." (Italics supplied.)

Many cases arising under this section have been before this court. They are easily available, and it is not necessary to discuss them in detail. One of the most valuable and enlightening cases is State v. Bishop Seabury Mission, 90 Minn. 92, 97, 95 N. W. 882, 883. That case was ably presented to the court, and the opinion bespeaks a most thorough research of the authorities. True, in that case the defendant was an educational institution, "a seminary of learning." But we think certain statements made by the court in that case are of value here because these statements relate to the general purpose of the constitutional exemption granted to institutions favored by the quoted section [90 Minn. 97]:

"The work of such institutions is done primarily for the individual educated, but results ultimately in the public good. Their function is largely public, and property possessed by them is devoted, not to private gain to individuals, but to a beneficent use— the education and enlightenment of the citizen. * * * In construing the section of the Constitution under consideration, the spirit of the times when it was adopted, as shown by the attitude of the territorial legislature and the people, should be infused into it, and reasons of practicability and effectiveness, so far as consistent with the usual canons of construction, applied in determining its purpose and meaning. In this light, it is important to inquire how such institutions may best and most successfully be encouraged. The 'encouragement' ought not to be limited to mere 'formal acts of recognition or praise on the part of the state or people, but to broad acts of such potentiality as will result in substantial benefit and assistance to them. Of course, the people would not tolerate the direct appropriation of money from the public treasury for such institutions, and immunity from taxation has been resorted to as the most effectual and substantial way of extending them aid and assistance."

The "ultimate public good" so recognized by the court in the cited case furnishes a compelling reason for giving recognition to defendant's public service in the case before us. Pulmonary tuberculosis is and always has been considered a matter of grave concern. It is commonly referred to as the "great white plague." Local, state, and nationwide efforts are and have been made to stay its ravages. This is a matter of such common knowledge that mere mention is adequate. Referring to the facts hereinbefore related, we do not think there can be any doubt that defendant is rendering public service ultimately resulting "in the public good."

We had occasion recently to consider a hospital tax case, State v. Browning, 192 Minn. 25, 29, 255 N. W. 254, 256, which involved the same issues as presented here. The court said:

"We are inclined to the view that it was intended that a public hospital also should be operated for the benefit of the public

in contradistinction to being operated for the benefit of a private individual, corporation, or group of individuals. So construed, 'operated for the benefit of the public' means operated without an intent to make a private profit. *It is not thereby meant that the institution must dispense charity or that it may not charge a fee for services rendered.* 'Operated for the benefit of the public' does mean that the receipts shall not be substantially more than the disbursements so that a profit results. Nor is it meant that a hospital is exempt for a particular year merely because there is no profit for that year. *The controlling feature is whether the institution was built, organized, and/or is maintained with an intent to make a private profit, not whether there happens to be a profit in any given year.* This definition would seem to be in accord with the apparent intent of the framers and electors who adopted art. 9, § 1, of the constitution. Surely it was not intended to exempt from taxation the numerous private hospitals (often operated by charlatans) throughout the state owned by one or more individuals with a view to making a private profit." (Italics supplied.)

There the trial court found, and we sustained the finding, that the hospital was a private one (192 Minn. 30) "organized and maintained with a view to making a private profit" and for that reason should be taxed. The very opposite is true here. The court found the facts against the state's contentions, and the findings are supported by adequate evidence.

Affirmed.