## STATE v. WILLMAR HOSPITAL, INC. AND ANOTHER. BRANTON FOUNDATION, INC., APPELLANT.[1]

February 6, 1942.

No. 32,919.

*George W. Jansen* and *L. D. Barnard,* for appellant.

*Roy A. Hendrickson,* County Attorney, and *R. W. Stanford,* City Attorney of Willmar, for the State.

PETERSON, JUSTICE.

This is a proceeding to enforce payment of delinquent personal property taxes for the year 1939. The citation was issued against

[1]Reported in 2 N. W. (2d) 564.

the Willmar Hospital, Incorporated. At the trial Branton Foundation, Incorporated, was substituted as defendant.

Defendant interposed the defense that it is an institution of purely public charity and as such is exempt from taxation under Minn. Const. art. 9, § 1.

Prior to April 29, 1939, the property in question was owned by the Willmar Hospital, Incorporated, a corporation organized for private profit and controlled by Dr. B. J. Branton, Dr. A. F. Branton, and their wives, who owned all the capital stock. The corporation also owned the Willmar Clinic, which it operated in conjunction with the hospital.

The owners of the Willmar Hospital, Incorporated, decided to form a new corporation organized as a purely public charity to take over the hospital. Accordingly, on April 29, 1939, the Doctors Branton and their wives organized the defendant Branton Foundation, Incorporated. The articles of incorporation are identical with those of the corporation considered in State v. H. Longstreet Taylor Foundation, 198 Minn. 263, 269 N. W. 469, and provide in substance that the purpose of the corporation is to conduct and operate a hospital on a nonprofit and purely charitable basis; that it shall have the power to acquire property by purchase and gift either absolute or upon trust or condition; that there shall be two classes of members, viz., regular, who shall be the holders of its capital stock and possess exclusive voting rights, and contributing, who, as the word indicates, shall have the privilege of contributing to the corporation; that its duration shall be perpetual; that there shall be 100 shares of capital stock without nominal value; that the management of the corporation shall be vested in a board of not less than three nor more than seven directors, the first board to be composed of the incorporators; that there shall be no sharing or distribution of profits, but all thereof shall be devoted to the advancement of the purposes and objects of the corporation; and, in the event of dissolution, that all gifts and devises shall be transferred to such other charitable purposes as the board of directors shall determine and the remaining property shall belong to the regular membership.

Defendant had received no gifts and had no endowments or property or means of any kind. It was unable to pay for any property which it might purchase. Notwithstanding its lack of means, the Willmar Hospital sold to it the hospital property and equipment. The real estate was sold on April 29, 1939, under contract for deed for a purchase price of $75,000, of which $1,000 was paid down. The balance was payable in 74 annual installments of $1,000 each beginning May 1, 1940, with interest at six per cent per annum on the balance of the purchase price. Defendant took possession as vendee. The source of the $1,000 down payment was not disclosed.

Defendant gave the Willmar Hospital its note for $12,000 in payment of the fixtures, beds, chairs, furniture, equipment, machines, and appliances, medical, surgical, and otherwise. The note was dated April 29, 1939, bore six per cent interest, and was payable in 24 annual installments of $500 each beginning May 1, 1940.

After acquisition by defendant, the hospital and the clinic were operated the same as before it took over, except that each was operated as a separate entity and each made separate charges to patients. The clinic was operated by Dr. B. J. Branton and Dr. A. F. Branton, as a copartnership. The hospital did not have a separate business office. Its business was handled through the clinic, which employed two stenographers, one bookkeeper, and one nurse. The clinic kept the hospital records as well as its own.

The Doctors Branton owned an electrocardiograph, a basal metabolism machine, and an X-ray machine, all of which they kept and, with their two associates, used in the hospital. Other doctors, of whom there were a considerable number, were permitted to use the same in the hospital upon payment of a fee of eight dollars for each such use of the electrocardiograph, five dollars for the basal metabolism machine, and a fee determined for each use of the X-ray machine.

The doctors connected with the clinic used both the hospital and the clinic in performing their duties.

The hospital received patients from the clinic and those sent in by other doctors. There were no free beds. All patients were charged fees according to a schedule. Indigent patients were taken care of. Charges were made for such services, but no effort was made to collect them.

Personal property is listed and assessed on May 1 of each year. Mason St. 1927, § 1984. Defendant had owned the property in question only two days on the taxing day. There was no showing that it had received one indigent or free patient. No statement to show its condition or operations during that period was available. Although defendant's articles of incorporation provided for perpetual duration, we were informed on the argument that its hospital building was razed during 1941. If the exemption here claimed were sustained, the incorporators would benefit as a result of the incorporation to the amount of the taxes thereon during the period since May 1, 1939.

The court below found that defendant is not an institution of purely public charity and disallowed the claimed exemption. Defendant appeals.

Defendant contends that its character as an institution of purely public charity is conclusively determined by its articles of incorporation and that it is not permissible to inquire into the use which it makes of its property for which it has been taxed. The state contends that its character is to be determined by what it does as well as by what it professes to be.

Minn. Const. art. 9, § 1, provides that institutions of purely public charity shall be exempt from taxation. The word "purely" means "wholly," "solely," and "exclusively" in such exemption provisions. Betts Hospital, Inc., Appeal, 27 Northampton Co. Rep. (Pa.) 69. The right to exemption depends upon the concurrence of the institution's ownership and use of the property for the purposes for which it was organized. State v. St. Barnabas Hospital, 95 Minn. 489, 104 N. W. 551; Jones v. Conn, 116 Ohio St. 1, 155 N. E. 791; Annotation, 34 A. L. R. 635. By the same token, where the property claimed to be exempt is subject to private control

and is devoted to substantial use for private profit, it is not exempt. Betts Hospital, Inc., Appeal, *supra;* City of San Antonio v. Santa Rosa Infirmary (Tex. Civ. App.) 249 S. W. 498; Bistline v. Bassett, 47 Idaho, 66, 272 P. 696, 62 A. L. R. 323, and annotation at p. 328.

In the particular case, such ownership and use are fact questions. State v. H. Longstreet Taylor Foundation, 198 Minn. 263, 269 N. W. 469. The fact of ownership by defendant was established. We are unable, however, to say as a matter of law that defendant devoted the property in question to a purely charitable use. Defendant was organized to take over the property of the Willmar Hospital ostensibly to change the use of the property from one for private profit to one for purely public charity. On the taxing day, defendant had owned and used the property for only two days. After it took over, there was a change in the method of charging patients so that the hospital and clinic each made separate charges. There was no change so far as use and control were concerned. Patients were routed as before, and, likewise, doctors connected with the clinic continued to use the hospital and clinic indiscriminately in doing their work after defendant became the owner the same as before. The entire business of the hospital was transacted in the clinic offices and handled by clinic employes. The owners of the clinic used the hospital as a place where they housed and where they and their licensees used and operated their electrocardiograph, basal metabolism machine, and X-ray machine.

The record does not show defendant's financial operations during the two-day period. Although it was afforded several opportunities during the trial to show the facts concerning that matter, no statement was forthcoming.

Defendant's right to exemption depended on whether the use for private profit under the former ownership had been changed to one of purely public charity under its ownership. Such change was not shown as a matter of law. The use and control for private profit characteristic of the former ownership continued after de-

fendant acquired the property. Substantial use of the property for private profit by those in control continued. Where there is a change of ownership of a corporation from one not exempt to one exempt from taxation, as, for example, a hospital or institution of learning, mere change of ownership, unaccompanied by complete change of control by, and use for the purposes of, the new owner, is not sufficient to entitle it to exemption from taxation. In Dana College v. State Board of Tax Appeals, 14 N. J. Misc. 308, 311, 184 A. 412, 414, there was a fact situation analogous to that here. There a college operated for private profit was taken over by a new corporation organized as one for nonprofit, but, as in the instant case, the use and control which characterized the old corporation was perpetuated in the new. While the court recognized the full force of the rule of exemption from taxation stated above, it held that the change from ownership and use of the college for private profit to a nonprofit use was left in such doubt that the evidence sustained a finding by the board of tax appeals that the property was not used exclusively for nonprofit purposes. The court said: "We are inclined to think that the college had not sufficiently emerged from its *chrysalid* state for us, on the printed book, to say that the state board of taxation was wrong in its conclusions." (Italics supplied.) See also Carteret Academy v. Orange, 98 N. J. L. 868, 120 A. 736. The quoted observation is applicable here. The evidence sustains the finding that defendant was not exempt as a purely public charity.

A contrary conclusion is not compelled by our decision in the case of State v. H. Longstreet Taylor Foundation, 198 Minn. 263, 269 N. W. 469. In that case there was present the factor, absent here, that the hospital participated in campaigns to disseminate information relative to the treatment of tuberculosis, and here there are present the factors, absent there, that those in control of the clinic exercised control over the hospital and used it for their private profit the same as the former owner did. The difference in the fact situations permitted the finder of fact here to differentiate as to the nature of defendant's use of the property,

with resulting difference of conclusion that defendant was not entitled to exemption from taxation.

The finding is sustained, and the order should be affirmed.

Affirmed.