VILLAGE OF HIBBING v. COMMISSIONER OF TAXATION.[1]

June 9, 1944.

No. 33,708.

[1]Reported in 14 N. W. (2d) 923.

*J. C. Henley*, for relator.

*Holmes, Mayall, Reavill & Neimeyer*, for Benedictine Sisters Benevolent Association.

PETERSON, JUSTICE.

The question in this case is whether certain land, including a hospital building situated thereon, was exempt from taxation as a public hospital on May 1, 1941, the date on which the taxes were levied.

The Oliver Iron Mining Company was the owner of the property, which was operated as a private hospital. On January 11, 1941, a

committee representing the Oliver and other mining interests, conceiving that it would be for the benefit of those interests and the public to convert the hospital into a public one and to enlarge it so it would serve the needs for hospital service of the village of Hibbing and surrounding area, entered into a contract with the Benedictine Sisters Benevolent Association to accomplish those purposes. The association is a charitable corporation, having the power, among others, to own, maintain, and operate hospitals. The contract provided that the committee would pay for remodeling the hospital and constructing an addition thereto, according to plans and specifications, at an estimated cost of $238,700; that upon performance of the terms thereof to be performed by the association the committee would cause Oliver to convey the property to the association by a warranty deed free and clear of all encumbrances, subject to certain exceptions and reservations in favor of the village of Hibbing for sewer, gas, water, and heat mains, and upon the condition subsequent that, if said hospital should cease to be owned, maintained, and operated in the manner therein provided, either by the grantee or by another approved charitable corporation or organization, the property should revert to the grantor with the same force and effect as if the conveyance had never been made. The association agreed to pay $50,000 toward the cost of the improvements and to expend $30,000 for hospital equipment; to accept, upon completion of the construction, remodeling, and equipment of the hospital, the conveyance of the property, and to own, maintain, and operate it as a "public general hospital," or cause that to be done, according to certain specified standards, and to admit to the hospital without discrimination as patients members of the public generally in need of hospitalization at rates and upon credit terms not more favorable to the operator of the hospital than those prevailing from time to time in the Hibbing district or other comparable territory (subject only to the capacity of the hospital), and to hospitalize emergency cases, including those of mining company employes. Under the arrangement with the committee, Oliver was legally bound to convey in performance of the contract.

Immediately following the execution of the contract the parties entered upon its performance. On February 19, 1941, a contract was let to a firm of contractors for the remodeling and construction work, which by continuous and diligent prosecution was completed in January 1942. At the time of the execution of the contract between the committee and the association, the latter executed notes for $50,000 in payment of its stipulated contribution toward the cost of remodeling and constructing the addition. As the work progressed, the association made the stipulated outlay for equipment installed in the hospital, but the record does not show how much had been expended on May 1, 1941. We were informed on the argument that the expenditure for such purposes as of that date was substantial.

On February 2, 1942, the association took over the management of the hospital. Shortly thereafter, on February 8, 1942, Oliver conveyed the property to the association by warranty deed containing the provisions, including the condition subsequent, stipulated in the contract. On March 2, 1942, the association applied for abatement of the 1941 taxes and for the abatement and cancellation of taxes for subsequent years. The commissioner of taxation granted the application, which was affirmed by the board of tax appeals upon the ground that the hospital was on May 1, 1941, a "public hospital" within the meaning of Minn. Const. art. 9, § 1.

Under the association's plan of operation, nursing and other services in the hospital were performed without compensation, except for board and lodging, by sisters, who, as members of the religious order under which the association was organized, had taken vows of poverty. Twelve sisters were so employed. A charge of $50 per month for each sister so employed was made by the association, which was paid into a fund for the support, care, and training of the sisters, thus maintaining the system under which their services were made available. Estimated at the prevailing rates of pay for lay workers, the value of the services rendered by the sisters between February 2 and December 31, 1942, exceeded by over $10,000 the aggregate amount charged at $50 per month for each sister. Dur-

ing that period the hospital, in spite of the savings from such uncompensated service of the sisters, sustained a net loss of over $6,000. The hospital admitted everyone who sought admission, whether able to pay or not; but tried to collect its charges in all cases.

The village of Hibbing, wherein the hospital is situated, as an interested party in the proceedings, contends that the hospital is not a public one and that it is not a public charity. Since the board of tax appeals held that it was a public hospital, but did not decide whether it was a public charity also, the only question before us is whether the hospital was a public one. It is urged here, as it was before the board and the commissioner, that the charge of $50 per month for the services of each sister is a profit which destroys the public character of the hospital; that, since title was not in the association but in Oliver on May 1, 1941, the hospital was not owned and operated as a public hospital by the association on May 1, 1941; and that the association was not an owner within the meaning of the exemption provisions of the constitution, because of the condition subsequent in the deed by which its title might be defeated. The association contends in effect that the $50 per month charge for each sister is a legitimate service charge in connection with the operation of the hospital and that, because of the contract between the committee and the association and its performance by the parties, the association owned and operated the property as a public hospital on May 1, 1941.

■ All questions of law and fact are to be viewed by us in the light of the rule that a decision of the board of tax appeals will not be disturbed if it has any reasonable basis in law. Duluth-Superior Dredging Co. v. Commr. of Taxation, 217 Minn. 346, 14 N. W. (2d) 439.

■ The constitution, art. 9, § 1, and Minn. St. 1941, § 272.02 (Mason St. 1927, § 1975), enacted pursuant thereto, provide that "public hospitals" shall be exempt from taxation. In State v. Browning, 192 Minn. 25, 255 N. W. 254, we held that a public hospital is one that is open to the public generally and is operated

without private profit, but that it is not necessary that the hospital be owned by the public, that it dispense public charity, or render its services without charging for them. In the particular case, where the evidence is in conflict or permits conflicting inferences, the question is largely one of fact, the determination of which by the trier is subject to review only under the rule stated. There is no serious dispute here as to the existence of all facts requisite to constitute the hospital a public one, except the one that the charge of $50 per month for the services of each sister constituted a private profit derived from the operation of the hospital by the association. The board of tax appeals was justified in adopting the view that the charge in question was an expense of operation paid in order to maintain the system under which the services of sisters were made available to the hospital at less cost than the same could be otherwise obtained. Under the rule of the Browning case, a public hospital is entitled to pay its operating expenses out of receipts derived from charges made for services rendered. See, State v. H. Longstreet Taylor Foundation, 198 Minn. 263, 269 N. W. 469.

Our decision in State v. Willmar Hospital, Inc. 212 Minn. 38, 2 N. W. (2d) 564, does not compel a finding that the association's hospital was a private one, because there the finder of fact was permitted to differentiate upon evidence, not present here, that the hospital there involved was subject to private control and was devoted to substantial use for private profit. Furthermore, in both the Longstreet Taylor Foundation and the Willmar Hospital cases the basis of the claimed exemption was that the hospital was a public *charity;* here the claim is that it was a public *hospital.*

■ Although the legal title was in Oliver on May 1, 1941, the association was the *owner* of the property within the meaning of the tax exemption provisions of the constitution and the statute. While an executory contract for a sale or conveyance of land conveys in law no legal title, Lamm v. Armstrong, 95 Minn. 434, 104 N. W. 304, 111 A. S. R. 479, 5 Ann. Cas. 418, in equity the purchaser is regarded, for purposes of taxation as well as for others, as the owner, subject to liability for the unpaid price, and the vendor as holding

the legal title in trust for him. In re Petition of S. R. A., Inc. 213
Minn. 487, 7 N. W. (2d) 484; Ritchie v. City of Green Bay, 215 Wis.
433, 254 N. W. 113, 95 A. L. R. 1081. See, Engineering Society of
Detroit v. City of Detroit, 308 Mich. 539, 14 N. W. (2d) 79. In the
S. R. A., Inc. and Ritchie cases, the vendee was in possession under
the executory contract of sale; here it was not. It is not necessary
that the vendee under an executory contract for the sale of land
be given possession to constitute him the equitable owner thereof.
Johnson v. Smith, 210 Iowa 591, 231 N. W. 470; 66 C. J., Vendor
and Purchaser, p. 705, § 262, note 41. The question here is not
whether the taxes were assessable against Oliver, or, as between
Oliver and the association, which one of them, absent exemption,
was liable for the taxes, but rather whether an equitable owner is
entitled to exemption where the vendor and vendee both devote the
property to a use which constitutes a basis for exemption from
taxation. Under such circumstances, even under the rule of strict
construction of tax exemptions against allowance of an exemption,
the reasons for allowing the exemption obtain, and the status of
the title as between the vendor and vendee should be no obstacle to
the exemption. See, Ritchie v. City of Green Bay, *supra.*

In People ex rel. Wilson v. St. Mary's Roman Catholic Hospital,
306 Ill. 174, 137 N. E. 865, it was held that a charitable hospital
owned by a church was not exempt as property used exclusively for
religious purposes. It appeared that the hospital was the equitable
owner of the property. The case is not in point; it was decided
under a different exemption provision. See, 35 Ill. L. Rev. 873.

■ If the property was not otherwise exempt from taxation on
May 1, 1941, it would not have become so because of the fact that
it was subsequently transferred to a corporation whose property
is exempt from taxation. The transfer in such a case is subject to
taxes which have become liens upon the property. Foster v. City
of Duluth, 120 Minn. 484, 140 N. W. 129, 48 L.R.A.(N.S.) 707. But
this case is different. The association, by the contract entered into
prior to May 1, 1941, had become to all intents and purposes the
beneficial owner of the property; it was the owner for purposes of

taxation. It is true, as we held in State v. Willmar Hospital, Inc. 212 Minn. 38, 2 N. W. (2d) 564, that the right to exemption depends upon the concurrence of the institution's ownership and use of the property as a public hospital. The right of exemption carries with it, as an incident, a reasonable opportunity by an institution entitled to tax exemption of its property, in execution of an intention so to do, to adapt and fit property acquired by it for the use upon which the right of exemption rests. Public hospitals as well as churches are entitled to such an opportunity. State v. Second Church of Christ, Scientist, 185 Minn. 242, 240 N. W. 532. In the cited case, we held that a site acquired by a church corporation, upon which it intended to erect a new church within a reasonable time under the supervision of an architect, was exempt from taxation as a church, church property, or house of worship "at least from the time the architect is so employed." There we said (185 Minn. p. 244, 240 N. W. p. 533):

"* * * The test is the use to which the property is devoted or about to be devoted. It is not necessarily the use or nonuse of the property at the exact time when the tax is levied. The location of the property with reference to buildings in which the institution carries on its activities, the present need of the institution for the use of the property, and its present good faith intention to make use of the property in the near future are elements to be considered."

Here the evidence justified a finding that the parties by contract agreed to devote the hospital to use as a public hospital just as soon as that conveniently could be done; that on May 1, 1941, the work of adapting and fitting the property for such use was being prosecuted continuously and diligently in good faith; and that a reasonable time only was being consumed for the purpose. The board was warranted in adopting the view that, since on May 1, 1941, the parties were using the opportunity, incident to the exemption, of adapting and fitting the property for use as a public hospital, they were devoting the property to a use comprehended within the exemption, and consequently that it was being used and operated as a public hospital within the meaning of the exemption provisions

of the constitution and statutes. See, New England Hospital v. City of Boston, 113 Mass. 518; State v. Settegast (Tex. Civ. App.) 227 S. W. 253. Borough of Longport v. Max and Sarah Bamberger Seashore Home, 91 N. J. L. 330, 102 A. 633, is contra, but it was decided under a statute allowing the exemption only where the property was "actually" used for the tax-exempt purpose and is not in point here.

■ The fact that the contract and the deed given in performance thereof contained a condition subsequent under which the title to the property should revert to Oliver upon breach of the conditions mentioned does not constitute the association any less the owner of the property entitling it to exemption thereof from taxation. Town of Wolf River v. Wisconsin Michigan Power Co. 217 Wis. 518, 259 N. W. 710, 98 A. L. R. 1369. A deed upon condition subsequent conveys the fee. Little Falls Water-Power Co. v. Mahan, 69 Minn. 253, 72 N. W. 69.

Writ quashed and decision affirmed.

