## STATE v. UNITED CHURCH HOMES, INC.

195 N. W. 2d 411.

February 25, 1972—No. 43122.

324

*Smith, Blomquist, Vitko & Rummel* and *Moritz J. Blomquist,* for appellant.

*George M. Scott,* County Attorney, and *David E. Mikkelson,* Assistant County Attorney, for respondent.

KNUTSON, CHIEF JUSTICE.

This is an appeal from a decision of the District Court of Hennepin County holding that certain property belonging to appellant was not exempt from ad valorem taxes. There were eleven separate actions, involving the real estate tax assessment payable in the years 1964 through 1969 and personal property taxes payable in the years 1965 through 1969. They were consolidated for trial and have been consolidated here on appeal. Two questions were raised by the pleadings, namely, whether any part of the property was exempt from the tax and, if so, what part was exempt and what part was subject to taxation. The parties stipulated that the issue of whether any of the property was exempt from taxation should be tried first, and that, if the court found any portion of the property to be exempt, the issue of the division into exempt and taxable portions would be tried later.

The trial court held that none of the property was exempt from taxation. Appellant thereafter moved to reopen the trial to permit the introduction of additional evidence and exhibits and for amended findings of fact, conclusions of law, and order for judgment. That motion was in all respects denied, and the appeal is taken from the original findings and order for judgment and from the order denying the motion to reopen. It is doubtful that the orders are appealable as of right, but in view of the importance of the case and the fact that it has been submitted without anyone questioning its appealability, we have determined to pass on the case on its merits under our discretionary powers for review.

The trial court found facts in great detail. We do not deem it necessary to set forth all of the facts, the following synopsis being sufficient for the purposes of this decision:

The real estate involved, known as the Calhoun Beach Manor, was formerly the Calhoun Beach Hotel. It is located on West Lake Street and Dean Boulevard in Minneapolis. The building and adjoining property were purchased by appellant on November 20, 1962, and possession was taken on December 1, 1962.

United Church Homes, Inc., originally known as Congregational Homes, Inc., was organized as a nonprofit corporation by the Congregational Conference of Minnesota, which later merged with the Evangelical and Reformed Church of Minnesota to form the Minnesota Conference of the United Church of Christ. After the merger, the name of appellant was changed from Congregational Homes, Inc., to United Church Homes, Inc.

Situated on the property is a nine-story building originally constructed as a hotel. Floors four through nine are residential units, while the first and second floors consist of areas leased to commercial enterprises and areas used by the Manor for catering activities and for a medical office and library for its residents. The third floor and a storage area above the ninth floor together with a part of the second floor are leased to WTCN, a commercial broadcasting station.

When the property was acquired in 1962, there were 98 residential units, the number being increased to 107 units by January 1966. From the time United Church Homes acquired the property, it began to establish it as a residence for senior citizens, 65 years and older. The trial court held that all residential units except four, for which no exemption was claimed, were adapted within a reasonable time for the purpose of housing the aged. Initially, the residents were admitted to the Calhoun Beach Manor on the basis of life-time contracts. The first contracts, in 1962, required payment of an accommodation fee of between $3,250 and $18,000, depending on the age of the applicant and the type of facility he would occupy, and a monthly fee of between $150 and $390, also depending on the type of facility occupied. By April 1965, the accommodation fees had been increased to a range of $6,000 to $20,000 with a monthly rental of $185 to $575.

The accommodation fee was returnable to a resident who left for any reason according to the following schedule:

During Period of Adjustment (90 days) — Full refund

During First Full Year Following Period of Adjustment — 50% refund

During Second Full Year Following Period of Adjustment — 25% refund

After Two Years Following Period of Adjustment — No refund

The company was permitted to reduce any refund by the amount of expenses incurred by it for alterations to accommodations made at a resident's request, and by an additional $500 application fee if termination occurred during the period of adjustment.

If United Church Homes terminated the contract, it was required to refund a prorated share of the accommodation fee based on the time a resident occupied a unit in relation to his life expectancy at the time the life contract was issued.

The life contract provided that United Church Homes would furnish a room and meals to a resident together with medical

care, including hospitalization or provision for nursing home care. The medical benefits were provided in full under the terms of the first of the contracts. They were decreased in subsequent contracts to 80 percent of approved costs, and the most recent contracts have discontinued payment for any medical services. In addition, a life contract provided for ceilings on the maximum increase to be allowed in the monthly charge.

A prospective resident was required to submit statements as to his financial status in order to satisfy the management that he would be able to meet the accommodation fee and the monthly payment for the duration of his life. In addition, the applicant was required to submit to a physical examination to determine if he was physically and mentally fit. Failure to meet either financial or health standards would disqualify the applicant.

The life-care contracts are no longer offered to prospective residents. Instead, all units are rented strictly on the basis of a monthly fee pursuant to one-year leases. Also, provision is no longer made for the payment for medical services required by incoming residents except for limited nursing care provided by staff nurses.

While the policy of United Church Homes was that the persons could be accepted for residency and could remain in residency even though they might not be able to meet the monthly payments, in only one instance was a person accepted where it appeared he could not meet the monthly payments for at least three-fourths of his lifetime. Others have been accepted where they could meet the monthly payments for three-fourths but not their full life. The court found, and the evidence sustains the finding, that the great majority of those accommodated by appellant had ample funds to provide comfortably for themselves in their old age.

While appellant argues, and it appears from the record submitted, that United Church Homes operated at a substantial loss, the trial court questioned the accuracy of the reported loss for the reason that the accommodation fee was not credited to

income but was treated as an addition to capital. Had these fees been credited to income, the result would have been entirely different.

The case raises two questions:

(1) Was the property in question tax exempt under Minn. Const. art. 9, § 1, as a "purely public charity?"

(2) If not, was it exempt as church property?

■ With respect to the first question, the case is nearly identical with Madonna Towers v. Commissioner of Taxation, 283 Minn. 111, 167 N. W. 2d 712 (1969), where we held similar property was not exempt from taxation. The difference with respect to the amounts to be paid, the services to be rendered therefor, and the organization and operation of the institution are so insignificant that, from the standpoint of taxability, the facts in this case cannot be distinguished from those in Madonna Towers. The law relating to tax exemption was so thoroughly explored in that case that we see no need of repeating here what we said there. We are convinced that, in so far as the question involving tax exemption on the theory that the property was operated as a "purely public charity" is concerned, this case is controlled by Madonna Towers. Since the opinion in Madonna Towers was issued, the whole question has been exhaustively annotated in Annotation, 37 A. L. R. 3d 565 (1971).

■ In addition to the issue of exemption as a "purely public charity" raised in Madonna Towers and in this case, appellant contends that, even if the property is not exempt under the provisions of our constitution relating to a "purely public charity," it is exempt under Minn. Const. art. 9, § 1, and Minn. St. 1969, § 272.02(5), because it is church property.

Prior to 1906, our constitution exempted from taxation "all churches, church property used for religious purposes, and houses of worship." Minn. Const. art. 9, § 3. Under this provision, we held that a parsonage used by a church congregation was not exempt. County of Ramsey v. Church of the Good Shepherd, 45 Minn. 229, 47 N. W. 783 (1891). The constitution was

amended in 1906 to exempt "all churches, church property and houses of worship." Minn. Const. art. 9, § 1. It still reads the same. The history of the change and its effect upon church property may be found in State v. Church of Incarnation, 158 Minn. 48, 196 N. W. 802 (1924), discussed in Note, 8 Minn. L. Rev. 531. In the later case of State v. Union Congregational Church, 173 Minn. 40, 216 N. W. 326 (1927),[1] we more or less equated the exemption granted to "church property" to the exemption allowed educational institutions in State v. Carleton College, 154 Minn. 280, 191 N. W. 400 (1923). In the case of State v. Union Congregational Church, *supra,* we said:

"No hard and fast rule can properly be laid down to govern all cases. Generally speaking, it may be said that the rule governing exemption from taxation as to the real property of educational institutions is that all property reasonably necessary for and primarily used and devoted to the proper purposes of the institution and so located with reference to the main buildings or activities of the institution as to be reasonably suitable for such purposes is exempt from taxation." 173 Minn. 44, 216 N. W. 328.

In the case of State v. Board of Foreign Missions of Augustana Synod, 221 Minn. 536, 22 N. W. 2d 642 (1946),[2] the "church property" exemption was held to include the house provided for a church official who was head of the foreign missions, even though the house was not located in proximity to any actual church building. The court said:

"* * * The constitutional exemption in the interest of the public welfare was granted, not to a church building or parsonage, but to the church as a living institution for the advancement of religion as a way of life for all men."[3] 221 Minn. 542, 22 N. W. 2d 645.

---

[1] See, 12 Minn. L. Rev. 191.

[2] See, 31 Minn. L. Rev. 753.

[3] For a discussion of what is church property, see Note, 11 Minn. L. Rev. 541.

The difficulty in this case is that the property is not owned by any church. In the case of Christian Business Men's Committee of Minneapolis, Inc. v. State, 228 Minn. 549, 554, 38 N. W. 2d 803, 808 (1949),[4] we said:

"In order for any institution to qualify for tax exemption under Minn. Const. art. 9, § 1—and M. S. A. 272.02 enacted pursuant thereto—there must be a concurrence of *ownership* of the property by an institution of the type prescribed by the constitution and a *use* of the property for the purpose for which such institution was organized."

See, also, State v. Willmar Hospital, Inc. 212 Minn. 38, 2 N. W. 2d 564 (1942); Village of Hibbing v. Commissioner of Taxation, 217 Minn. 528, 14 N. W. 2d 923, 156 A. L. R. 1294 (1944); State v. Second Church of Christ, Scientist, 185 Minn. 242, 240 N. W. 532 (1932).

As we said in State v. Board of Foreign Missions of Augustana Synod, 221 Minn. 536, 544, 22 N. W. 2d 642, 646 (1946), "[i]t is immaterial that the * * * activities of the church are conducted through a subordinate corporation organized for this specific purpose and subject to its control and direction. The corporate device is a recognized means adopted by many institutions for the administration of certain departmental or divisional activities and has no bearing on the merits." But the facts in this case do not support the contention that this corporation is merely a subordinate operating arm of a church.

Here the trial court has found as a fact:

"The petitioning taxpayer, United Church Homes, Incorporated, is specifically found not to be church property. It is a separate corporate entity and was organized under the Minnesota Non-profit Corporation Act, Minnesota Statutes Chapter 317, and the church body, the United Churches of Christ, which the petitioning taxpayer alleged was in fact the parent and control-

---

[4] See, 34 Minn. L. Rev. 70.

ling body over the United Church Homes, Incorporated corporate entity, does not have any authority to control in any way the petitioning taxpayer's corporation. There is no corporate connection between these two bodies. In the Articles of Incorporation of the United Church Homes, Incorporated, Article XI, provides for the dissolution, liquidation, or winding up of the corporation and establishes that upon dissolution, liquidation or winding up the affairs, all property or assets which are not held in trust for specified purposes, shall be distributed to any corporation or association organized and operated exclusively for religious, educational or charitable purposes, no part of the property or net earnings of which inures to the benefit of any individual, as may be selected by the directors of the corporation (United Church Homes, Inc.) in such amounts and parts and upon such terms, conditions, and limitations as may be determined by the directors, all to the extent permitted by the laws of the State of Minnesota relating to non-profit corporations."

These findings are amply supported by the record. While we might all agree that the interest of the religious institution in what the owner of this property is here doing is commendable, it does not alter the fact that the property is not owned by any church, and under no construction can it be held to be church property. We must agree that under the facts of this case, the property is not exempt from taxation as church property.

Affirmed.

MR. JUSTICE OTIS took no part in the consideration or decision of this case.

MR. JUSTICE TODD, not having been a member of this court at the time of the argument and submission, took no part in the consideration or decision of this case.