SUMNER LODGE, No. 180, I. O. O. F.,

*v.*

ODD FELLOWS HOME OF NEW JERSEY et al.

[Decided June 23d, 1910.]

1. In the absence of statutory authority a benevolent and charitable corporation has no power, by the action of its stockholders and directors, or either, to voluntarily dissolve itself.

2. A corporation organized for benevolent and charitable purposes could not, under the act incorporating it, use its funds in any other manner except as provided in the act. Its certificate of incorporation stated that its sole object was the relief of indigent, aged, or disabled members, and its constitution recited that its purpose was to purchase a home for and to support aged and indigent Odd Fellows in the manner the by-laws prescribed. The by-laws prescribed that any lodge or encampment of the Independent Order of Odd Fellows might become a member by paying one cent a week for each of its members and that such lodge or encampment had the privilege of applying for the admission of inmates, &c. The by-laws further provided that donations should be invested and only the interest used for maintenance. Subsequently the land and home were sold and the proceeds added to the donation fund.— *Held,* that whether or not the corporation had power to become dissolved by voluntary action, such funds could not be distributed among its members.

Heard on bill, answers, replications and agreed state of facts.

From the bill, answers and agreed state of facts the situation is as follows:

On the 28th day of April, 1886, there became incorporated under the act to incorporate benevolent and charitable associations (*1 Gen. Stat. p. 149*), a corporation known as the Home for Aged and Indigent Odd Fellows of the State of New Jersey. In the certificate it is certified

"that the sole and exclusive object of the said incorporation is the relief of such of the members thereof as shall by reason of age and indigence, physical disability, infirmity or accident be rendered incapable of attending to their usual occupation or calling, and also such other charitable

and other objects and purposes as may be provided for in the constitution and by-laws of the said association."

On April 7th, 1887, the name of this corporation was changed to "The Odd Fellows Home of New Jersey."

The act under which it was incorporated provided in the first section (*Gen. Stat. p. 152 § 19*)

"that every association of persons not less than three in number associated for benevolent and charitable purposes \* \* \* are hereby constituted a body politic and corporate in law." \* \* \*

By the fifth section of the said act (*Gen. Stat. p. 153 § 20*) it was provided

"that the sole and exclusive objects of incorporations under this act shall be to relieve or support such of the members thereof, or such other persons as shall by sickness, casualty, old age or other cause be rendered incapable of attending to their usual occupation or calling \* \* \* to give and extend benevolent and charitable relief and assistance to persons who are not members or corporators \* \* \* and other charitable objects; any one or more of the above objects may be provided for in the constitution and by-laws of such corporation, which shall have power to provide for such necessary expenses as shall accrue by carrying into effect the said object or objects; and no part of the funds of such corporation shall be used for banking purposes or in any manner except as provided in this act."

By the third section of the act (*Gen. Stat. p. 150 § 3*) it is provided

"that the estate and property, of what kind soever the same may be, of such association, shall be vested in them as a corporation, and by their corporate name such association shall be able to purchase, receive, take, hold and convey, for the use and benefit of such corporation, and for the purpose of effecting the objects of its incorporation, any lands, tenements and hereditaments, and any sum or sums of money, rights, securities, goods and chattels, by gift, alienation, devise, bequest or otherwise, of any person or persons, bodies politic and corporate."

By the second article of the constitution adopted by the corporation it is provided

"that the purpose of this corporation is to purchase a home for, and to support and maintain aged and indigent Odd Fellows in such a manner as the by-laws may prescribe."

"ARTICLE 3. This corporation shall be composed of Lodges, Encampments and Rebekah Degree Lodges of the Independent Order of Odd Fellows * * * and each lodge * * * belonging to this corporation shall elect one member thereof annually, to represent them in this corporation, in such manner as the by-laws may prescribe."

"ARTICLE 4. Any Lodge, Encampment or Rebekah Degree Lodge may become a member of this corporation upon the payment of such fee and weekly dues, as the by-laws may prescribe, for the support and maintenance of this corporation."

By section 1, article 1, of the by-laws, it is provided that

"each Lodge, Encampment or Rebekah Degree Lodge, members of this corporation, shall * * * elect one representative to serve one year, and shall certify his election." * * *

There are then provisions for the representatives meeting at Trenton at a time fixed, and electing officers who are to hold their offices for fixed periods; and there is then provision for special meetings of the representatives. There is provision that the lodges shall pay their dues quarterly in advance; and a provision is made for nine managers of the corporation.

Article 12, section 1, provided that no application from lodges or encampments for admission of inmates shall be entertained until they have been members of the home for a period of twelve months.

"SECTION 2. All Lodges or Encampments admitted members of the Home, having a membership of one hundred or less. shall be entitled to place one inmate therein; and one inmate allowed to every additional one hundred members; and every Lodge or Encampment wishing to place an extra inmate shall pay the sum of one hundred and four dollars per annum, to be paid quarterly to the Board of Representatives, said Lodge or Encampment to be credited with per capita over and above the even hundred."

"SECTION 3. Inmates not to be admitted beyond a number that the current revenues of the Home will support, to be determined by the Managers."

Sections 4 and 5 provide how applications for admission shall be made, and, among other things, provides that applicants for admission "* * * must be at least fifty years of age, and unable to support themselves by reason of age and indigence." By reason of physical disability, infirmity or accident any Odd

Fellow, irrespective of age, was admissible. The applications for admission were provided to be signed by officers of the lodge or encampment to which the applicant belonged, and were forwarded to the secretary of the board, and referred to the examining committee of the representatives who report in writing to the board of managers, and then, if the board of managers so provide, the applicant was admitted.

By section 6 of this article no inmate of the home was permitted to act as a representative or manager, or to take part, directly or indirectly, in the government or its management.

Article 14, section 1, provided

"Lodges and Encampments located in New Jersey may be admitted at any time as members of this corporation, on application to the Secretary and upon payment of the required dues; and shall then be entitled to elect a representative for the next yearly meeting.

"SECTION 2. Lodges and Encampments shall pay one cent per week for each of their members for the support and maintenance of the Home, payable as per Article 2."

"ARTICLE 15. When the Home shall become self-sustaining by interest accruing on invested funds the contributions from Lodges and Encampments shall cease and determine."

"ARTICLE 17. *Section* 1. All money, bonds, mortgages, securities and real estate, coming to this corporation by bequest, gift or other legal transfer, shall be constituted a permanent fund, the principal of which shall not be expended unless such funds or property shall have been received for a certain purpose set forth in the instrument of writing."

"*Section* 2. The interest, rents and profits derived from the permanent fund shall be expended for the support and maintenance of the Home, provided that the interest and income received from the bequests, devises or gifts made for a specific purpose shall not be expended for any other purpose than that for which they shall be given."

By subsequent sections of this same article there is provision made by which any person, lodge, encampment or society contributing to the permanent fund the sum of $5,000 might endow a permanent living in the institution, and any member of any lodge or encampment contributing to the permanent fund the sum of $1,000 might endow a permanent living for themselves in the institution.

There appear to have been twenty lodges or encampments that elected representatives and paid their contributions at the inception of the corporation. From time to time during its existence

some of these dropped out by resignation or failure to continue to pay, and other lodges and encampments elected representatives and made their contributions in accordance with the constitution and by-laws; so that at the time of the passage of the resolution concerning the distribution of the corporation's property, which will be hereafter set forth, there were fifty-seven lodges or encampments electing representatives to and paying contributions to the corporation.

The corporation purchased several pieces of real estate, and upon one of them, near Trenton, was erected or reconstructed a house in which the inmates were lodged and fed.

The books and records of the corporation containing entries previous to January 8th, 1896, appear to have been lost; but from the books in its possession it appears that from January 8th, 1896, down to the time of the filing of the bill in this suit the donations, bequests and other gifts from various sources to the defendant corporation aggregated $14,288.59. In 1898, the Odd Fellows Home of New Jersey offered to transfer its property for a nominal consideration to the Grand Lodge of Odd Fellows of New Jersey, so that the latter might continue to operate the home instead of the Odd Fellows Home of New Jersey continuing to do so. There was a long series of negotiations between the two bodies, and finally the grand lodge refused any such arrangement. Eventually, and in 1907, the grand lodge agreed to buy the real estate belonging to the Odd Fellows Home of New Jersey for what it estimated its true value to be, namely, $12,000, and this was accepted by the Odd Fellows Home of New Jersey, and a deed was given by the latter on the 25th day of January, 1908, to the Grand Lodge of Odd Fellows of New Jersey for its property situate near Trenton by which the same was conveyed in fee-simple, unencumbered by any trust of any description.

The $12,000 received from the grand lodge by the Odd Fellows Home of New Jersey, together with $3,219.67, which the latter had on hand, makes a total of $15,219.67.

At a meeting of what is called the "Board of Directors" (although I do not find any provision for any such board) held on the 8th day of January, 1908, the following resolution was adopted by a vote of ten to one:

"That there be paid out of the funds that will be on hand after receiving payment for our property to each Lodge now holding membership an amount equal to one dollar for each member as of October 1, 1907, as a payment on account of what would be due on a final division."

The complainant, Sumner Lodge, No. 180, I. O. O. F. (which was a member of the Odd Fellows Home of New Jersey), then filed its bill to prevent this method of distribution of the funds.

On the 11th of March, 1908, there was held a meeting of the representatives at which forty-nine attended. At that meeting there was passed a resolution reciting that it was deemed advisable and most for the benefit of the Odd Fellows Home of New Jersey that the same be dissolved, and that a meeting to pass on this would be held on Wednesday, the 29th of April, 1908, and that notices be given according to law. On the 28th of April, 1908, the meeting was held and fifty-one representatives attended. At that meeting a motion was passed that the corporation be dissolved and that the directors be instructed to discharge all indebtedness and expenses, file the necessary papers, and distribute the assets in accordance with the provisions of the resolution previously adopted at this meeting. That resolution was as follows:

"* * * That the funds of this corporation be distributed amongst the various Lodges and Rebekah Lodges who are now members of the Home, according to the amount actually paid in as dues by such respective Lodges and Rebekah Lodges from the time of the institution of the Home until the present day, as required by the constitution and by-laws of this Home. The amount to be received by each Lodge or Rebekah Lodge is to be such percentage of the assets now on hand, as the amount paid in for dues by each Lodge or Rebekah Lodge shall bear to the total amount paid in as dues by the present membership of the Home,"

and that the board of directors be instructed to take the steps necessary to put the same into effect.

At a subsequent meeting of the "directors," held on the 27th of November, 1908, the following resolution was adopted:

"That owing to the divergent and seemingly irreconcilable views held concerning the distribution of our funds, it is deemed for the best interest of all concerned that a definite judicial determination of the questions at issue be had; to that end he [referring to the counsel retained on behalf of the corporation] is instructed to endeavor to arrange with counsel for complainant [referring to the complainant in this suit] for

a statement of fact, covering every phase in controversy, to be submitted to the Court of Chancery for determination, upon proper hearing of said cause."

After the passage of the resolutions which have just been quoted the complainant in this suit amended its bill so as to include such resolutions; and then prayed that the court should determine whether the assets could be distributed in accordance with such resolutions, and if it determined that they could, that it then order such distribution. It added another prayer, asking for the ascertainment and determination and decree of this court, whether or not the funds of the Odd Fellows Home of New Jersey can legally be distributed among the members of the said home, and, if so, that the complainant's share be ascertained in the manner set forth in the resolution adopted by the said home at the meeting of April 29th, 1908, or in such other manner as shall be equitable and just.

Because of some doubts which arose as to whether or not the Grand Lodge of Independent Order of Odd Fellows of the State of New Jersey should not be made a party defendant, it was thought best that it should be, and it accordingly was.

It seemed possible, before the facts were more fully developed, that when the Odd Fellows home transferred the home to the grand lodge, the latter became chargeable with the execution of a trust with respect to the same; and that it might be that any funds donated to the Odd Fellows Home of New Jersey should be held for the benefit of whoever was carrying on that home—in this instance, the Grand Lodge of Independent Order of Odd Fellows of the State of New Jersey.

The two defendants, the Odd Fellows Home of New Jersey and the Grand Lodge of Independent Order of Odd Fellows of the State of New Jersey, filed answers. The answer of the Odd Fellows Home of New Jersey admits all the facts in the bill in so far as they agree with the statement of facts stipulated by the counsel in this suit. It denies that all the moneys received either from donations or otherwise were honestly and conscientiously expended for the maintenance and support of the home, but, on the contrary, states that of the donations received, $4,000 was expended to pay a part of the principal of certain mortgages on

the said home property, and $2,500 was invested in savings banks and is now held by this defendant in cash, together with $4,000 which this defendant has received back by the payment of the $12,000 purchase price of its home property, and that the balance of the donations received by this defendant, which, together with the $6,500, amount to a larger sum than the entire assets of this corporation now on hand, were mingled with the money received by this defendant from time to time as dues, and that this commingled fund was honestly and conscientiously expended for the maintenance and support of the home, except such part as is left of said commingled fund which is represented by the $15,219.67 now on hand. This defendant denies that there was any understanding or arrangement with the grand lodge by which the latter should have any interest or right in the assets of the Odd Fellows home corporation. It denies that the complainant is entitled to any distribution of any part of the assets, and it asserts that it is impossible to carry out the distribution as provided for in the resolution of this defendant because it asserts that there are no assets or funds to which the complainant or the other lodges would be entitled.

The other defendant, the grand lodge, denies that it took the property under any trust, asserts that it gave full value, and owns the same in fee-simple, and prays to be dismissed.

Since the controversy is really with respect to the defendant the Odd Fellows Home of New Jersey, I shall, in using the term "defendant," refer to that corporation except in those cases where I specifically refer to the other defendant, the Grand Lodge of the Independent Order of Odd Fellows of the State of New Jersey.

*Messrs. Melosh & Morten,* for the complainant.

*Mr. Peter W. Stagg,* for the Odd Fellows Home of New Jersey.

*Mr. Charles A. Woodruff,* for the Grand Lodge of the Independent Order of Odd Fellows of New Jersey.

GARRISON, V. C.

From the foregoing statement of facts it will appear that the defendant the Odd Fellows Home of New Jersey has undertaken the proceedings for voluntary dissolution, and, incident thereto, has provided for the distribution of its assets.

The first question requiring consideration is whether there is any statutory authority for such proceedings. If there is not, it is quite clear that such corporation has no power, by the action of its stockholders and directors, or either, to voluntarily dissolve itself. *Benedict* v. *Columbus Construction Co. (Chancellor Mc-Gill, 1891), 49 N. J. Eq. (4 Dick.) 23.*

The act under which this corporation became incorporated was entitled "An act to incorporate benevolent and charitable associations." *Rev. 1875; Gen. Stat. p. 149.* By a supplement approved on the 12th of March, 1878 *(Gen. Stat. p. 151 § 12),* provision was made for proceedings for dissolving such associations. This act and this specific supplement were included among acts repealed by an act entitled "An act to repeal sundry acts relating to associations not for pecuniary profit," which was approved on the 22d of March, 1899. *P. L. 1899 p. 190 § 8.* Whether this attempted repeal is efficacious in view of the title of the act is, I think, a very grave question. *Montclair Military Academy* v. *State Board of Assessors (Supreme Court, 1900), 65 N. J. Law (36 Vr.) 518.*

Furthermore, in the act of 1899 (at *p. 197*), there is a section reading as follows:

"Nothing herein contained shall impair or annul any vested rights, privileges, or powers heretofore obtained and used under authority of said acts or any of them, and all corporations which have heretofore availed themselves of the provisions of said acts may continue to enjoy the rights and advantages which they now enjoy and exercise by virtue thereof."

The intention of the legislature is quite plain. By an act entitled "An act to incorporate associations not for pecuniary profit," approved April 21st, 1898, they made provision for the incorporation (and by the fifth section for the reincorporation) of all corporations of a fraternal, religious, beneficent and charitable kind, evidently intending thereby to bring them all under the

provisions of one general statutory rule; and therefore, in the next year, by the act of 1899 (at *p. 189*), they repealed all existing legislation under which societies or associations of this kind had previously been incorporated.

Since, however, these previously incorporated bodies had been provided for by acts of various titles, the doubt, heretofore expressed by me and by the supreme court in the cited case, exists as to whether the repealing act is effective, its title being perhaps not constitutionally adequate. The act of 1898, just referred to, also provides for dissolution, but only of corporations incorporated (or reincorporated) under it; and therefore that provision does not apply to the defendant corporation now being dealt with. If, however, it should be determined that the title of the repealing act was adequate, and that by force of such act the act under which the defendant corporation was incorporated was repealed, we still have to deal with the provision in the act of 1899, which has been quoted in full, and which reserves to existing corporations vested rights, privileges or powers.

I incline to the opinion that since one of the rights, privileges or powers (or, perhaps, in the language of the section, it might be proper to call it an "advantage") was the right to dissolve itself by voluntary action. The question therefore to be considered (assuming that the law will be decided in favor of this corporation having the right to voluntarily dissolve itself) is whether it may, upon dissolution, distribute its assets among its members. The specific thing before the court, under the bill and answers, is whether it may distribute them in accordance with the resolution adopted at a meeting of the representatives of its members. That resolution, it will be recalled, provided that the assets on hand should be distributed by giving a certain proportion to each of the lodges or encampments now members, such proportion to be arrived at in a certain manner in said resolution set forth.

It will be remembered from the recital of facts that this corporation, under the act incorporating it, could not use its funds in any other manner except as provided in the act; that by its certificate of incorporation it set forth that its sole and exclusive object was the relief of indigent, aged or disabled members. By its constitution it recites that its purpose is to purchase a home

for and to support and maintain aged and indigent Odd Fellows in the manner the by-laws prescribe. The by-laws prescribe that any lodge or encampment of the Independent Order of Odd Fellows might become a member by paying one cent a week for each of its members, and that such member, *i. e.*, the lodge or encampment, had the privilege of applying for the admission of inmates, the essential details concerning which application and admission of such inmates having been heretofore set forth.

The proofs show that the maintenance of the home always cost more than the receipts from the dues of the lodges which, at any. one time, belonged to or were members of the defendant corporation. The so-called members of the corporation varied from year to year. Lodges would join and pay their contributions so long as they pleased, and then would cease paying their contributions, and thereupon cease to be members; and other lodges which had not theretofore paid dues would commence doing so and would thereupon become members. The deficit arising from the excess of expenditures over income from dues was made up out of the donations or gifts heretofore alluded to.

As has been explained, the records of the corporation have been lost, but from those which have been preserved it appears that such donations, for a period from January 1st, 1896, to June, 1908, amount to $14,288.59.

The by-laws in the seventeenth article provided that all such donations should be invested and only the interest used for maintenance. But evidently the exigency of the circumstances caused an entire disregard of this provision. It is the fact, however, that the amount of money now in hand almost exactly corresponds to the amount of donations that the corporation, by its present records, shows that it has received.

It is entirely clear that such donations were made to this corporation for its charitable purposes. Whether the work in which this corporation engaged was a charity in the legal sense is a question of doubt and difficulty; but that it was a charity in its popular sense there can be no doubt.

There was no suggestion anywhere that anyone was to make any profit out of its operation. Whether the providing of a home for the indigent, aged or disabled members of a certain fraternal

order or society is within the limits of a "charity" as defined by the courts was debated at great length by counsel, and I find that there is a contrariety of decision in the courts. But I do not find it necessary for me to determine this question in this suit, and I therefore conceive it improper for me to indulge in any expression of my personal views concerning this question. Whatever may be determined to be the proper thing to do with these funds, I am clearly of the opinion that it is improper for them to be distributed among the lodges who happened to be members of the defendant corporation at the time that the dissolution proceedings were undertaken.. This, of course, applies not only to the specific method of distribution provided for in the resolution of April 28th, 1908, which the complainant insists is the proper one and which the defendant, curiously enough, now disclaims any right to make; but also to any other method or manner of distribution of these moneys among the lodges or encampments aforesaid.

It is the fact that whatever moneys were paid to this corporation by the lodges or encampments who, at various times, since its corporation, were members thereof, were used for the purpose for which they were contributed, namely, the support and maintenance of the home. All moneys contributed for this purpose as dues, and all moneys donated were, by the organic law of the corporation, by the specification in its charter or certificate, by its constitution and by-laws, to be devoted to but one purpose, namely, the relief and support of the aged, indigent and disabled members of the lodges who should become members.

Nowhere in the organic law, or in any other law relating to this defendant corporation, can there be found to be any greater or other right in the so-called members than to obtain relief for their aged, indigent or disabled members as aforesaid. Under these circumstances, and with the law as existing, I do not see how these so-called members have any right to take the assets of the corporation to themselves by any form of proceedings. I do not, therefore, decide, because I do not have to, whether, under existing law, this corporation has the power to become dissolved by its voluntary action, or has not such power. I do not decide, because I should not in the present state of the pleadings and with only

the present parties before me, what the corporation should do with these funds. I do decide that they may not be distributed, in accordance with the resolution of the defendant corporation passed on the 28th day of April, 1908, or in any other manner, among the members of the defendant corporation.

Whatever funds are now in the hands of the defendant corporation arose out of donations made to it; these were undoubtedly for the benevolent, not to say charitable, purposes which it was carrying on. I do not find that the so-called members thereof have any right to divert those funds to their individual uses, or, by any proceedings, to obtain these funds from the defendant corporation and take them to themselves.

If this corporation has the right to dissolve under the law, and is unable to properly dispose of the fund without the interposition of this court's aid, it should make such proper application to this court, bringing the proper parties before it, and raising the issue in a proper manner to have this court then pass upon the question which would then have to be considered. There is no such issue now in the case. It may be that if the moneys cannot legally be distributed among the so-called members, the defendant will be able, without any aid or direction from this court, to fulfill its fiduciary duties respecting said funds. In any event, it is improper, under the present pleadings and issues, and with the present parties as the only ones, to discuss, much less dispose of, the important and difficult questions involved.

The present bill, which prays for an ascertainment of the complainant's share and for a distribution of the funds among the members, must be dismissed.