STATE v. SELMA BROWNING.[1]

June 8, 1934.

No. 29,839.

[1]Reported in 255 N. W. 254.

*Morris J. Owen* and *Lees & Bunge,* for appellant.
*William E. Flynn,* for the state.

*DEVANEY, Chief Justice.*

Proceedings instituted to obtain judgment for the sale of certain real estate for delinquent taxes for the year 1931. The defense is that the real estate involved has been and is used as a public hospital and hence is exempt from taxation under art. 9, § 1, of the Minnesota constitution, and 1 Mason Minn. St. 1927, § 1975(3), which exempts from taxation all public hospitals. The trial court found that the property was not a public hospital and therefore not exempt. He adjudged that the real estate should be sold, and from this judgment defendant, the owner of the hospital, appeals.

The hospital in question admittedly was owned and operated as a private hospital by Dr. William E. Browning during his life and up to the time of his death in 1929. Since that time his wife, Selma Browning, the defendant herein, has owned the hospital. She claims that she has conducted it as an open hospital, all doctors and patients being admitted on equal terms. The facts herein will be

discussed as of 1931, the year for which taxes allegedly are delinquent. Six doctors habitually took their practice to this hospital during 1931, and the county sent to this hospital all patients who were public charges and paid therefor a reduced flat rate. Defendant is and has been a trained nurse and during 1931 lived in her hospital as superintendent thereof. The evidence shows that the hospital has been conducted at a loss ever since defendant has owned it, though defendant admits she would not have refused to make a profit if it had been possible. She handled the money as her own money. During 1931 a charge was made to all doctors for the privilege of operating in the hospital, and a regular charge was made to all patients. There were no charity beds in the hospital. Defendant had full control and management of the hospital and power to determine who should or should not be admitted and what doctors should or should not use the hospital.

No attempt is made to show that this is a charitable hospital, and thus it is not urged to be exempt from taxation under that part of art. 9, § 1, of the constitution which exempts "purely public charity." Further, there is no doubt but that the entire property here involved is used for hospital purposes, so that if this is a public hospital the property is exempt in its entirety under the rule of County of Hennepin v. Brotherhood of Gethsemane, 27 Minn. 460, 462-463, 8 N. W. 595, 38 Am. R. 298. The only issue then is whether or not the realty here in question is a public hospital within the meaning of art. 9, § 1, of the Minnesota constitution, which provides:

"* * * public burying grounds, public school houses, public hospitals, academies, colleges, universities, and all seminaries of learning, all churches, church property and houses of worship, institutions of purely public charity, and public property used exclusively for any public purpose, shall be exempt from taxation. * * *"

The word "public" may be variously defined. It may be defined as meaning open for the use, enjoyment, and participation of the public generally even though a fee is charged, as a public dance hall, a public carrier, etc.; it may be defined as meaning owned by the

public, that is, by the government or some of its subdivisions, as a public building, public courthouse, etc.; it may in certain situations be defined as meaning operated for the benefit of the public rather than for the benefit of a private individual; it may have other meanings which it here is not necessary to mention or to discuss.

It is quite evident from a consideration of the entire constitutional provision and the use of the word "public" at least six times therein that it was not intended to confine exemptions from taxation only to property owned by the public. The whole tenor of the provision is against such a construction, and the provision has not been so construed. "Public burying grounds" need not be owned by the state or any of its subdivisions. State v. Crystal Lake Cemetery Assn. 155 Minn. 187, 193 N. W. 170. "Public property used exclusively for any public purpose" need not necessarily be owned by the public, state, county, or municipality. See State ex rel. Realty Co. v. Cooley, 62 Minn. 183, 186, 64 N. W. 379, 29 L. R. A. 777.

It is unreasonable to suppose that mere access to, use of, or patronage by the public is the sole and only test of whether property is exempt under this provision of the constitution. If such were the intent of the framers of this provision, public utilities and public carriers would have been exempted expressly. Further, there is a strong inference against such a definition in State ex rel. Realty Co. v. Cooley, 62 Minn. 183, 187, 64 N. W. 379, 29 L. R. A. 777, where an officially designated "public market" was held not exempt as public property.

So much for generalities. In defining the word "public" as it appears in connection with the word "hospitals," the function of this court is to ascertain the meaning and intention of the framers of art. 9, § 1, who drafted these words and of the electors who by general vote made art. 9, § 1, a part of the constitution. We are of the opinion that the framers and voters meant first that there must be free access to the public without discrimination in order that a hospital may be a public hospital. We do not think, however, that this was intended to be the exclusive test as to whether a hospital is public.

We are inclined to the view that it was intended that a public hospital also should be operated for the benefit of the public in contradistinction to being operated for the benefit of a private individual, corporation, or group of individuals. So construed, "operated for the benefit of the public" means operated without an intent to make a private profit. It is not thereby meant that the institution must dispense charity or that it may not charge a fee for services rendered. "Operated for the benefit of the public" does mean that the receipts shall not be substantially more than the disbursements so that a profit results. Nor is it meant that a hospital is exempt for a particular year merely because there is no profit for that year. The controlling feature is whether the institution was built, organized, and/or is maintained with an intent to make a private profit, not whether there happens to be a profit in any given year. This definition would seem to be in accord with the apparent intent of the framers and electors who adopted art. 9, § 1, of the constitution. Surely it was not intended to exempt from taxation the numerous private hospitals (often operated by charlatans) throughout the state owned by one or more individuals with a view to making a private profit.

In so holding we are not unmindful of State v. Crystal Lake Cemetery Assn. 155 Minn. 187, 193 N. W. 170, which held a public burying ground to be exempt from general taxation even though a pecuniary profit ensued to private owners thereof; nor have we overlooked the language in Ramsey County v. Stryker, 52 Minn. 144, 147, 53 N. W. 1133, to the effect that seminaries of learning are exempt even though private in nature and organized for profit. In connection with the latter case it is to be noted, however, that all seminaries of learning are exempt, not merely public seminaries; whereas only public hospitals are exempt.

We do not here attempt to define the word "public" as used elsewhere in art. 9, § 1, of the constitution, nor do we hold that there may not be factors other than the two which we have here set out which must be present before a hospital can be said to be a public hospital. As previously pointed out, this word occurs at least six times in art. 9, § 1. What it means in these other five connections

does not concern us here. It may differ in each case in accordance with the probable intent of the framers of this provision and the voters who adopted it. We hold here only that at least two elements must be present before an institution is a public hospital. It must be open to the public generally, and it must be operated for the benefit of the public, and thus without a private profit.

Applying the above definition to the case at bar, we ascertain that this hospital is not a public hospital. We will assume that it was open to the public indiscriminately in 1931 (though it is noteworthy that defendant has and has had the power to determine who should and who should not be admitted), but it was not operated for the benefit of the public during that year. True, there was no profit for 1931, the particular year here in question. Yet the hospital, as defendant admits, is a private hospital organized and maintained with a view to making a private profit, and so should be taxed.

Affirmed.

