# FAIRMONT COMMUNITY HOSPITAL ASSOCIATION, INC. v. STATE.[1]

December 28, 1945.

No. 34,017.

[1]Reported in 21 N. W. (2d) 243.

108

*Leo J. Seifert,* for appellant.

*C. L. Erickson,* County Attorney, and *Guy E. McCune,* for the State.

THOMAS GALLAGHER, JUSTICE.

Petitioner was organized in October 1940 under §§ 309.01 to 309.06 (§§ 7892 to 7897), relating to social and charitable corporations. Its objects and purposes, as stated in its articles, are as follows:

"Article II.

"Section 2: To erect, maintain and/or operate a public hospital or hospitals on a non-profit basis, and to furnish hospitalization to the sick and injured and to provide nursing care and maintenance therein, and to maintain and operate a training school for nurses or nursing aids, and to do any and all other acts which may lawfully be done by a corporation of this class under the laws of the State of Minnesota. Any person making application to said Fairmont Community Hospital Association, Inc., shall be admitted as a patient, subject to such reasonable rules and regulations as may be prescribed by the Board of Trustees of said association. No per-

son shall be excluded therefrom by reason of race, sex, religious belief or nationality.

\* \* \* \* \*

"Article IV.

"This association shall have no capital stock. No member shall be entitled to receive as dividends, profits or otherwise any property or money derived from the operations of said association, but all .property, earnings or income of said association, after the payment of necessary charges and expenses of operation, shall be used exclusively to carry out the charitable purposes of this association as expressed in this Certificate of Incorporation.

\* \* \* \* \*

"Article VI.

"This association shall have perpetual succession."

The articles provide that total membership of the corporation shall never be less than five nor more than 16 persons. The original incorporators were 14 in number. Management, by virtue of the articles, is vested in a board of five trustees selected from the incorporators. On January 1, 1941, petitioner purchased a four-story hospital building at Fairmont from the Fairmont Clinic and Hospital Corporation, which was organized on March 1, 1928, under the general corporation laws of Minnesota.

The terms of purchase provided that $97,995.20 should be paid for the structure and $8,337.64 for the equipment and supplies therein. Petitioner paid the purchase price as follows: $56,500 by assuming a first mortgage bond issue on the property, and $41,495.20 by executing and delivering its note in that amount secured by a second mortgage thereon. Petitioner also executed and delivered its note for the equipment and supplies and secured the same by a chattel mortgage on such personal property. The notes and mortgages were dated January 1, 1941, and were due 25 years from that date. No cash was involved in the transaction. A warranty deed conveying the real estate and a bill of sale transferring the personal property to petitioner were delivered at that time.

Petitioner commenced its hospital business January 1, 1941. Since that time it has done business as a public hospital in accordance with the objectives expressed in its articles. Any doctor in good standing may use its facilities. Nurses and employes are directly responsible to the doctors on each case and to the manager of the hospital. The manager is responsible to the board of five trustees, and the trustees are responsible to the incorporators or their successors. No one ever has been refused admittance to the hospital. No member of the corporation has made a profit of any kind from the hospital, and no person has received any private gain or advantage from the earnings thereof.

Patients employ the services of their own physicians, and the latter look to the patients rather than to the hospital for compensation. When patients are unable to pay for hospitalization, the local relief office is asked to take care of the expenses involved, including medical and surgical fees. The county pays such charges. The hospital extends a lower rate to the county for poor patients.

In the event a profit is made, it is used either for making improvements in the hospital or to pay off the principal indebtedness. The articles specifically provide that no person shall be excluded from the hospital by reason of race, sex, religious belief, or nationality. In 1941 and 1942, the hospital operated at a loss. In 1943, there was a profit, which was used in making improvements and additions to the hospital.

On January 1, 1944, a tax assessment for the 1943 taxes was levied against petitioner's real estate. Prior to June 1, 1944, petitioner instituted these proceedings under L. 1935, c. 300 (§§ 278.01 to 278.13 [Mason St. 1940 Supp. §§ 2126-1 to 2126-13]), petitioning the district court to exempt its real estate from said taxes under Minn. Const. art. 9, § 1, and § 272.02 (§ 1975), which specifically exempt "public hospitals" from taxation.

Before the organization of petitioner as indicated, the hospital building was owned and operated as a private institution by the Fairmont Clinic and Hospital Corporation. Doctors Harry A. Miller, Victor H. Gardner, and Henry G. Blanchard had organized

said corporation, and each of them owned common stock therein in the sum of $10,000. They maintained their offices in the hospital, but other doctors in Fairmont and vicinity did not use its facilities. Later, Dr. J. J. Heimark purchased $7,000 and Dr. H. B. Bailey $6,000 of the common stock of the corporation. No further common stock was issued. Preferred stock therein in the sum of $46,000 was sold to various citizens of Fairmont and vicinity. The record does not disclose the entire preferred stockholders list. A bond issue secured by a first mortgage on the real estate, originally in the sum of $75,000, as hereinbefore mentioned, had been reduced to $56,500 at the time said corporation sold its property to petitioner.

By 1940, this prior corporation was in financial difficulties. Shortly before January 1, 1941, it employed Mr. A. R. Stasel of Minneapolis to appraise its real estate and equipment. He appraised the building and lot at $97,995.20 and the equipment and supplies at $9,017.64 as of December 31, 1940. The agreement described, between the corporation and petitioner, providing for the sale of the property at its appraised value, was then consummated. No cash accrues for the benefit of the common stockholders of the old corporation out of the transaction. Petitioner's note for $41,495.20 when paid will be insufficient to take care of the unsecured creditors of the old corporation and the holders of its preferred stock. A collateral agreement has been reached whereby such preferred stockholders may apply their stock at its par value on hospital services rendered for them by petitioner. Petitioner, in turn, then may apply said stock at its par value on its indebtedness to the prior corporation.

Subsequent to the transfer of the property, Doctors Blanchard and Miller continued for a short time to have their offices in the hospital. Petitioner entered into a lease with them providing therefor. However, Dr. Miller left Fairmont about July 16, 1941, and has been gone since that time. Dr. Blanchard ceased practicing medicine in 1941 and thereafter was engaged by petitioner as manager of the hospital, serving until June 1944. During 1943, the

year involved, no doctors maintained offices in the building. The lease referred to appears to have been abandoned about August 1942. In January 1944, plaintiff adopted a resolution refusing to allow any doctor rental space for offices in the building. All doctors in Fairmont and vicinity may use the facilities of the hospital, and most of them do. All other hospitals in Fairmont and vicinity, with one exception, have voluntarily closed to give preference to petitioner.

During 1943, the board of trustees responsible for active management of the hospital consisted of O. R. Wolf, E. B. Nelson, and Doctors Parsons, Heimark, and Blanchard, all of Fairmont. Only two of said parties are actually engaged in the practice of medicine. Only two of them are common stockholders in the old corporation. Of the 14 organizers of the new corporation, only three (Doctors Miller, Blanchard, and Heimark) were active in the old corporation.

On September 8, 1944, the district court found that the real estate involved was not in use as a public hospital in 1943 and hence was not exempt from taxation. As indicated in its memorandum, the court's determination was based principally upon the following factors: (1) That the reduction of the indebtedness of creditors, including bondholders of the old corporation, as a result of petitioner's business operations, established a private gain to some of petitioner's organizers incompatible with the status of a public hospital; (2) that the activities of certain of the common stockholders of the old corporation who were also incorporators and trustees of petitioner, including Dr. Blanchard, in continuing to maintain offices in the hospital after the transfer and in leasing out equipment owned by them to doctors using the hospital facilities, established not only a private gain to them incompatible with petitioner's status as a public hospital, but also, in substance, the control of the new institution by the controlling officers of the old; and (3) that the possibility of future amendment of petitioner's articles of incorporation so as to change petitioner from a public to

a private institution supported the conclusion that petitioner had not established its right to exemption as a public hospital.

This appeal is taken from the order denying petitioner's motion for amended findings and conclusions or for a new trial.

■ We are of the opinion that the evidence fairly established that petitioner was organized as a public hospital and during 1943 was conducted as one; therefore, that it was exempt from the tax involved, under Minn. Const. art. 9, § 1, and § 272.02 (§ 1975). We feel that the factors upon which the trial court based its findings do not warrant the conclusion drawn therefrom.

At the outset, under prior decisions of this court, it is clear that a public hospital need not operate at a loss nor as a charitable institution to remain eligible for exemption from taxation under the constitutional and statutory provisions above referred to. As this court said in State v. Browning, 192 Minn. 25, 29, 255 N. W. 254, 256:

"We are inclined to the view that it was intended that a public hospital also should be operated for the benefit of the public in contra'distinction to being operated for the benefit of a private individual, corporation, or group of individuals. So construed, 'operated for the benefit of the public' means operated without an intent to make a private profit. It is not thereby meant that the institution must dispense charity or that it may not charge a fee for services rendered."

■ From this it follows that petitioner's charges for services, including services to poor patients, and the profit resulting at the end of its third year of operations are immaterial factors on the issue involved. Under all the facts disclosed here, if the profit made does not go to petitioner's incorporators or to any individual as private gain, petitioner must be regarded as a public hospital. The record discloses that no part of such profit finds its way, by any device, into the private accounts of petitioner's incorporators or officers or trustees, and in fact, under its articles, at no time in the future could such profit be so diverted. It is true that opera-

tions of the hospital, if successful, may ultimately reduce the indebtedness of the old corporation and perhaps pay the same in full. This still would not result in any profit to any member of the new corporation, nor would it in fact result even in repayment of the investment of the common stockholders of the old corporation, for the total purchase price at most is sufficient to satisfy only the first mortgage bondholders, the creditors, and possibly a portion of the par value of the preferred stock outstanding. Payment to the bondholders and preferred stockholders constitutes merely payment of the purchase price of the building and equipment. Surely it cannot be that a corporation, organized to conduct a public hospital and operating as such, loses its tax-exempt status because it uses such profits as it may derive in payment of the purchase price of its property. Had petitioner paid *all cash* for the structure and had such cash been sufficient to pay up *in full* the bondholders, the preferred stockholders, and even the common stockholders of the old corporation for their investments, it would not logically follow that petitioner was thereafter forever barred from attaining the status of a tax-exempt public hospital. The reduction of the indebtedness of the old corporation is merely the payment of the purchase price of its property and has nothing to do with the status of the new corporation as a public or private institution. That is determined by its articles of incorporation and the manner in which it conducts its business. If such business is conducted so that none of its incorporators, trustees, directors, or officers derive a private gain therefrom, then, obviously, under its articles it is entitled to retain its status as a public hospital.

■ Likewise, the arrangement whereby the preferred stock of the old corporation might be used in payment of hospital services appears to be immaterial on the principal issue. If preferred stockholders by this means are repaid a portion of their investment in the property, this cannot be regarded as a profit or private gain inuring to the incorporators, trustees, or officers of the new corporation as such, even though some of them may have been preferred stockholders in the prior corporation. As previously

stated, had they been paid in full for their shares at the time of the sale, such payment could scarcely be regarded as a private gain or profit to them as incorporators or officers in the new organization, nor would it in itself affect or alter the subsequent status of the latter as a tax-exempt public hospital.

■ The evidence does not disclose control of petitioner by the controlling officers, directors, or stockholders of the old corporation. Petitioner had 14 original incorporators, and this number was later increased to 16. Only three of these 16 were common stockholders or officers in the old corporation. It is obvious that these three could not control the affairs of the new corporation against the wishes of the majority. There are five members of the board of trustees of the new corporation, only two of whom were common stockholders or officers of the old corporation. Three of the five trustees are not doctors but businessmen, acting (as are all trustees) without salary and solely in the interest of the public welfare. Certainly nothing in such facts affords a basis for the conclusion that control of the two corporations is vested in the same individuals and has been a continuing factor throughout all the transactions.

■ Nor do we agree with the trial court's conclusion that, because some of the doctors in control of the old corporation continued for a time after the sale to maintain offices in the hospital, petitioner could not thereafter claim exemption as a public hospital. As previously indicated, this arrangement was temporary in nature and did not exist at all during 1943, the year involved in these proceedings. The resolution adopted by petitioner forbidding the practice in the future eliminates the possibility of any resumption thereof by any of the parties mentioned. As stated in Village of Hibbing v. Commr. of Taxation, 217 Minn. 528, 535, 14 N. W. (2d) 923, 926:

"* * * The right of exemption carries with it, as an incident, *a reasonable opportunity* by an institution entitled to tax exemption of its property, in execution of an intention so to do, *to adapt and fit property acquired by it for the use upon which the right of*

*exemption rests.* Public hospitals as well as churches are entitled to such an opportunity." (Italics supplied.)

Under the circumstances outlined herein, we feel that the brief period of time during which certain doctors continued to maintain their offices in the hospital should not constitute a bar to petitioner's subsequent claim for exemption from taxation as a public hospital during the year 1943.

■ The trial court indicated that, because certain equipment belonging to Doctors Miller, Blanchard, and Heimark remained in the hospital subsequent to the sale and was leased to doctors desirous of using the same in connection with their cases, with a resulting gain to the owners thereof, petitioner's status as a public hospital might be questioned. Obviously, the equipment involved was left in the hospital for the convenience of *any* doctors desiring to use the same. They were not compelled to do so. The evidence does not disclose whether the payments made actually resulted in a profit to the owners. If they did, such profit was distinct from any profits earned or payments made by the hospital as such. The evidence discloses that Dr. Blanchard contributed to petitioner, without consideration, personal supplies valued at between $1,000 and $2,000. All things considered, it seems clear that the arrangement was one of convenience for all concerned and relatively unimportant as a factor in determining petitioner's exemption status in any event.

■ Under our decisions in Village of Hibbing v. Commr. of Taxation, 217 Minn. 528, 14 N. W. (2d) 923, and State v. H. Longstreet Taylor Foundation, 198 Minn. 263, 269 N. W. 469, the evidence presented clearly established that petitioner was exempt from taxation as a public hospital. Our decision in State v. Willmar Hospital, Inc. 212 Minn. 38, 2 N. W. (2d) 564, is readily distinguishable on the facts there presented. In the Willmar case, it was claimed that the institution involved was exempt as a *public charity.* Here, the claim is that petitioner operates as a *public hospital.* In the Willmar case, the control of the hospital continued in the same individuals after its transfer to the new corporation. There, on

the taxing date, the new corporation had owned and used the property for only two days. No evidence was presented as to the financial operations thereof. At the time of the hearing before this court, the hospital had been razed. There, both prior and subsequent to the transfer, all business was conducted in the separate clinic offices of the stockholders who controlled both corporations. As the court there stated (212 Minn. 42, 2 N. W. [2d] 566):

"* * * The use and control for private profit characteristic of the former ownership continued after defendant acquired the property. Substantial use of the property *for private profit by those in control continued.*" (Italics supplied.)

The court there held that petitioner had failed to sustain the burden of establishing that its property was exempt from taxation as a public charity. Here, the undisputed evidence established that petitioner operated its property as a public hospital in accordance with its articles so as to entitle it to exemption under the constitutional and statutory provisions involved.

■ We do not feel that the possibility that petitioner at some future date might amend its articles to change its status from a public hospital to one for private profit was a factor to be considered in these proceedings. This issue was not presented at the trial below either by the pleadings or the evidence. It was apparently an afterthought of all parties and of the trial court. The case should be decided on the evidence and issues presented. What petitioner might do at some future date is speculative, problematical, and remote from evidence of the character and quality necessary to sustain the trial court's finding. Petitioner was organized as a public hospital under the social and charitable provisions of the laws of this state. Presumably, under such laws, it is entitled to exemption from taxation because its property in effect may be regarded as property held by it for the public benefit. Should petitioner attempt at some future time to change its character for the benefit of its incorporators as private individuals, it would seem that the state might properly intervene to uphold

whatever right the public might have in the property of the corporation. See, In re Estate of Peterson, 202 Minn. 31, 277 N. W. 529; Brown v. Maplewood Cemetery Assn. 85 Minn. 498, 89 N. W. 872; Sherman v. Richmond Hose Co. No. 2, 230 N. Y. 462, 130 N. E. 613; Centennial and Memorial Assn. of Valley Forge, 235 Pa. 206, 83 A. 683; Sumner Lodge v. Odd Fellows Home, 77 N. J. Eq. 386, 77 A. 36; In Matter of Mount Sinai Hospital, 250 N. Y. 103, 164 N. E. 871. In any event, under the evidence and issues presented at the trial below, we hold that petitioner sufficiently established that in the year 1943 it was operating as a public hospital in accordance with its articles, and in consequence is entitled to exemption under Minn. Const. art. 9, § 1, and § 272.02 (§ 1975).

■ On April 4, 1944, petitioner made application to the county board of Martin county to have the land in question declared exempt from taxation and to have the real estate and personal property taxes for the year 1941 and subsequent years cancelled on the same grounds as are here advanced. The petition was denied, and respondent contends that the decision of the county board in effect constitutes a judgment and determination binding on petitioner and that it is a bar to the present proceedings. Said proceedings were brought pursuant to § 270.07 (§ 1983), which provides:

"The commissioner of taxation * * * shall have power to grant such reduction or abatement of assessed valuations or taxes * * * as he may deem just and equitable, * * *. Application therefor shall be submitted with a statement of facts in the case *and the favorable recommendation of the county board* or of the board of abatement of any city where any such board exists, and the county auditor of the county wherein such tax was levied or paid." (Italics supplied.)

A reasonable interpretation of the foregoing statute would indicate that the county board is without power to grant the relief petitioned for, but may make its recommendation to the commissioner of taxation in connection therewith. Here, the trial court held that the presentation of the application to the county board

did not constitute an election of remedies sufficient to bar these proceedings. As the trial court pointed out, *certiorari* is expressly provided to review a decision of the board of tax appeals (§ 271.10 [Mason St. 1940 Supp. § 2362-19]), but no review is provided or authorized for failure of the county board to make a recommendation to the commissioner of taxation as provided in § 270.07 (§ 1983). Under such circumstances, since the proceedings before the county board did not permit petitioner to present the matter to the commissioner of taxation, we concur in the trial court's conclusion that the county board's action did not constitute a final judgment or bar to the present proceedings.

■ Respondent asserts that petitioner's petition is not definite and specific enough to permit it to introduce the evidence submitted at the trial. The petition sets forth merely that "said real estate has been unlawfully assessed for taxation and that the whole tax levied against the same is illegal." This, respondent asserts, constitutes no more than a legal conclusion and is insufficient for the objective here sought. L. 1935, c. 300, § 1 (§ 278.01 [Mason St. 1940 Supp. § 2126-1]), provides:

"Any person having any estate, right, title, or interest in or lien upon any parcel of land, who claims that * * * the tax levied against the same is illegal * * * or that the property is exempt from the tax so levied, may have the validity of his claim, defense, or objection determined by the district court of the county in which the tax is levied by serving copies of a petition for such determination upon the county auditor, county treasurer, and the county attorney and filing the same, with proof of such service, in the office of the clerk of the district court on or before the first day of June of the year in which such tax becomes payable."

Section 278.02 (§ 2126-2) provides:

"Such petition need not be in any particular form, but shall clearly identify the land involved and shall set forth in concise language the claim, defense, or objection asserted."

Section 278.05 (§ 2126-5) provides:

"Such petition, without any answer, return, or other pleading thereto, shall stand for trial at any general term in session when the same is filed; * * *. The court shall without delay summarily hear and determine the claims, objections, or defenses made by the petition and shall direct judgment accordingly, and the trial thereof shall disregard all technicalities and matters of form not affecting the substantial merits."

Section 278.13 (§ 2126-13) provides:

"The judgment entered in such proceedings, except for the right of review on appeal, shall be final and conclusive as to the taxes involved therein."

Section 278.06 (§ 2126-6) provides:

"Sections 279.18, 279.19, 279.21, 279.23, 279.24, and 279.25 [§§ 2119, 2120, 2122, 2124, 2125, and 2126] shall apply in so far as they are applicable thereto, except as herein otherwise provided."

Section 279.15 (§ 2116), insofar as it relates to the form of the answer required, is substantially the same as the language defining the form of petition required under § 278.02 (Mason St. 1940 Supp. § 2126-2). In construing such language, we have held that the strict rules of pleading in an ordinary action do not apply, State ex rel. Powell v. District Court, 47 Minn. 406, 50 N. W. 476; State ex rel. Thompson v. District Court, 51 Minn. 401, 53 N. W. 714; and, further, that the court is required to disregard all technicalities and matters of form not affecting the substantial merits. See, State v. West Duluth Land Co. 75 Minn. 456, 78 N. W. 115; Clary v. O'Shea, 72 Minn. 105, 75 N. W. 115, 71 A. S. R. 465.

Under such circumstances and in view of the liberality of construction apparently contemplated by the legislature in enacting the provisions above referred to, we hold that petitioner's petition was sufficient to permit it to present the evidence necessary to sustain its contention that its property was exempt from taxation as a public hospital.

The order appealed from is reversed.