# STATE v. ACADEMY OF OUR LADY OF LOURDES.[1]

February 1, 1946.

Nos. 34,148, 34,149.

*Thomas J. Scanlan,* County Attorney, and *Oscar C. Ronken,* Special Assistant County Attorney, for the State.

*Dorsey, Colman, Barker, Scott & Barber, Leland W. Scott, John W. Windhorst,* and *Betty Whitlock Washburn,* for respondent.

[1]Reported in 21 N. W. (2d) 617.

MAGNEY, JUSTICE.

The state has brought two proceedings to enforce taxes for the years 1942 and 1943, respectively, on personal property used by St. Mary's Hospital in the city of Rochester, and on moneys and credits derived from the operation of said hospital. The court found that the property was exempt from taxation and ordered judgment for defendant in each case. Appeals are from the judgments so entered.

Defendant claims exemption by reason of Minn. Const. art. 9, § 1, which provides:

"* * * public hospitals, academies, colleges, universities, and all seminaries of learning, all churches, church property and houses of worship, institutions of purely public charity, and public property used exclusively for any public purpose, shall be exempt from taxation, * * *."

The provisions of this section are reflected in Minn. St. 1941, § 272.02 (Mason St. 1927, § 1975, as amended).

St. Mary's Hospital is not a legal entity, and the property assessed in the name of St. Mary's Hospital is in fact owned by defendant, the Academy of Our Lady of Lourdes. Defendant is a corporation organized under the provisions of G. S. 1878, c. 34, Title 3, as amended. Its objects, general purposes, and government are set out in its amended articles of incorporation.

Article II of such articles reads in part as follows:

"The objects and general purposes of this corporation and the general nature of its business is, and shall be, to acquire, * * * maintain, operate, * * * conduct * * * schools, academies, colleges, universities and other institutions of learning * * * to acquire, * * * maintain, operate, * * * and conduct * * * hospitals, homes for the care, * * * and education of orphaned, destitute, delinquent and/or abandoned children * * * and homes for the care and support of aged or indigent persons * * *."

In other words, its objects and purposes are to establish and conduct institutions of learning; to establish and operate hospitals,

institutions for orphaned and other unfortunate or neglected children, and homes for the aged.

Article III of such articles of incorporation reads:

"This corporation shall have perpetual succession."

Article V provides:

"All the Sisters of Saint Francis of the Third Order Regular now or hereafter duly affiliated by perpetual vows to the Congregation of Our Lady of Lourdes, the Motherhouse of which is situated in the city of Rochester, Minnesota, shall be members of this corporation * * *."

Article VIII provides:

"There shall be no capital stock of this corporation and, as the controlling objects and purposes of this corporation are benevolent, charitable and educational, no part of the net income of this corporation, or of its property or assets upon dissolution or liquidation, shall ever enure to the benefit of any of its members or of any private individual."

The articles provide that the government of the corporation and the management of its affairs shall be vested in a board of trustees, consisting of 11 members. By the terms of the articles, the general superior, the four counsellors, and the treasurer, all elected by the chapter, are ex-officio members of the board, and the remaining are elected by and from the members.

The first hospital building was erected in 1889 at a cost of $23,313.53. In 1942, the total assets over liabilities of St. Mary's Hospital was $7,572,708. This does not include depreciation on buildings and equipment nor notes payable by defendant. Its net operative income in 1942 was $546,817.04. It has 890 beds, 13 operating rooms, a nurses home, swimming pool, auditorium, recreation hall, various areas set aside for educational work in connection with the care of patients and research along certain lines for the benefit of patients, and a number of pathology laboratories used and staffed by the Mayo Clinic but maintained by the hospital.

The ultimate object of the latter service is to find new and better ways of treating patients. Neither the clinic nor the hospital receives any pecuniary profit from the clinical research. The Mayo Clinic contributes the equipment used, but the hospital owns it. Patients who submit themselves for examination and treatment in that part of the hospital devoted to clinical research are nonpaying patients. The service is contributed to medical education, with the hope that the patient will also benefit. The results of this research are available to the entire medical profession. The hospital has 400 student nurses, and, during the years 1920 to 1944, inclusive, it had 65,365 physicians from all parts of the world registered at the surgical clinics.

It was stipulated at the trial that—

"no private individual can derive any profit from the Academy of Our Lady of Lourdes, either by reason of its current operations or in the event of liquidation and dissolution of the Academy of Our Lady of Lourdes, and no private individual can derive any profit from the operation of St. Mary's Hospital by said Academy of Our Lady of Lourdes."

The hospital is open to all persons, regardless of race or creed. If St. Mary's Hospital were operated independently, under articles of incorporation similar to those of the defendant, the Academy of Our Lady of Lourdes, to whom it belongs, and were operated and maintained without any profit to any individual and open to all persons regardless of race or creed, it is obvious that its real and personal property and its moneys and credits would be exempt from taxation. In Fairmont Community Hospital Assn. Inc. v. State, 221 Minn. 107, 114, 21 N. W. (2d) 243, 247, where we passed upon this question and held that the Fairmont Community Hospital was a public hospital and exempt from taxation, we stated:

"At the outset, under prior decisions of this court, it is clear that a public hospital need not operate at a loss nor as a charitable institution to remain eligible for exemption from taxation under the constitutional and statutory provisions above referred to. As this

court said in State v. Browning, 192 Minn. 25, 29, 255 N. W. 254, 256:

" 'We are inclined to the view that it was intended that a public hospital also should be operated for the benefit of the public in contradistinction to being operated for the benefit of a private individual, corporation, or group of individuals. So construed, "operated for the benefit of the public" means operated without an intent to make a private profit. It is not thereby meant that the institution must dispense charity or that it may not charge a fee for services rendered.' "

See, also, State v. H. Longstreet Taylor Foundation, 198 Minn. 263, 269 N. W. 469; Village of Hibbing v. Commr. of Taxation, 217 Minn. 528, 535, 14 N. W. (2d) 923, 926, also recently decided by this court.

As has been stated, St. Mary's Hospital is not a corporate entity. It belongs to the Academy of Our Lady of Lourdes, a charitable organization, defendant herein. The Academy, in addition to St. Mary's Hospital, owns and operates at the present time several institutions, namely, the College of St. Teresa at Winona, Minnesota, which is purely a college, granting bachelors and masters degrees; the School of Musical Art, an institution at which are taught music, foreign languages, folk dancing, and speech; St. James Hospital, located at St. James, Minnesota, a public hospital and home for the aged; an academy at Owatonna, Minnesota, now used as a parochial school; and St. Francis Sanatarium, located in Colorado, a 20-bed hospital for tubercular patients. It owns a motherhouse in Rochester, which is the home of the General Superior of the Congregation and the office of the Academy of Our Lady of Lourdes. It also owns and operates a hospital in Ohio. This, however, is separately incorporated.

No private individual can derive any profit from the Academy of Our Lady of Lourdes, either by reason of its current operations or in the event of its liquidation. If each of its activities which we have detailed were separately incorporated under a corporate structure

such as the Academy of Our Lady of Lourdes, the property of each would be tax-exempt. It would seem that the mere fact that all the activities are carried out under one corporation, all within one legal entity, cannot possibly make the property or proceeds of any one of them taxable. In its memorandum the trial court said:

"The defendant corporation has been organized for a number of related and consistent purposes, none of which are commercial, industrial, or profitable in a business sense. Its controlling objects and purposes are benevolent, charitable and educational."

It was stipulated at the trial that, aside from borrowed moneys and minor contributions, the only substantial source of net revenue of defendant is St. Mary's Hospital. Plaintiff contends that, since the admitted chief support of all the activities of defendant comes from the income from St. Mary's Hospital, profits from the operation of the hospital are intended, and, since they result, that it is not a public hospital and therefore not tax-exempt. The complaint seems to be that there is a surplus. Of course, it was the intention to operate the hospital so as to create a profit and avoid a deficit. There was no intention, however, to make a private profit, and none has been made. The fact that the hospital has been successfully operated cannot, of course, be the feature which makes it legally an institution subject to tax, or, if unsuccessfully operated, tax-exempt. Its close coöperation with the Mayo Clinic, the most distinguished institution of its kind, together with its own competent administration, accounts for its astounding growth. From its income it has enlarged its plant to the proportions we have indicated. The sisters contribute their services to the hospital. Such services are characterized by arduous work and long hours. For such services they receive no pay. They do receive training, room, board, clothing, medical and hospital care, and support in old age. They are also provided a decent burial. It was estimated by a witness competent to testify that the cash value of the services rendered by the sisters to St. Mary's Hospital during the years 1919 to 1942, inclusive, would be $2,830,000 on a

minimum salary evaluation, less the value of certain things which they receive, as enumerated above. On June 30, 1942, the value of the physical plant of the hospital was $7,604,590.43. No depreciation has been taken. The total value of all the physical properties of defendant on said date was $14,285,265.80. The notes outstanding on said date amounted to $4,445,100, and its total liabilities $4,602,982.43. The total notes issued amounted to $11,602,057.22, of which over $7,000,000 has been paid. The excess of receipts from St. Mary's Hospital over expenditures, including expenditures for additions to the hospital buildings and equipment from November 1, 1919, to June 30, 1942, was $2,924,075.01. This figure contains no allowance for depreciation or for uncompensated sisters' services. In no way can the increase in investment increase the value of any stock. Neither the hospital's property nor profits can ever inure to the benefit of any private individual or group of individuals.

In its organization and operation, St. Mary's Hospital is, in our opinion, clearly a public hospital, and as such its property is exempt from taxation. It follows that it is unnecessary to consider whether it may also be classified as a charitable institution or an academy, college, or seminary of learning, and exempt from taxation on those grounds.

Judgments affirmed.